## LAMAR v. SPALDING.

(Circuit Court of Appeals, Third Circuit. May 20, 1907.)

### No. 42.

1. ABATEMENT AND REVIVAL—TWO ACTIONS PENDING—STATE AND FEDERAL COURTS.

A proceeding for a writ of assistance in a state court, following a sale and conveyance of land under a decree of foreclosure entered by such court, does not operate as a bar, either temporarily or permanently, to an action of ejectment between the same parties for the same property, brought by the applicant for the writ in a federal court.

[Ed. Note.—Pendency of action in state or federal court as ground for abatement of action in the other, see notes to Bunker Hill & Sullivan M. & C. Co. v. Shoshone M. Co., 47 C. C. A. 205, and Barnsdall v. Waltemeyer, 73 C. C. A. 521.]

2. COURTS—FEDERAL COURTS—ADOPTION OF STATE PRACTICE—BILL OF PARTICULARS—AMENDMENT.

A federal court has power under the statute of New Jersey in the exercise of its discretion, to permit a bill of particulars in an action of ejectment to be amended on the trial.

3. WRIT OF ERROR—REVIEW—HARMLESS ERROR.

The direction of a verdict by a federal court, even if erroneous, is harmless error and not ground for reversal where, pending proceedings for review, a final judgment has been rendered in another proceeding between the same parties in a state court which conclusively determines the question at issue in favor of the party for whom the verdict was directed.

In Error to the Circuit Court of the United States for the District of New Jersey.

Alan H. Strong, for plaintiff in error.

Edmund Wilson, for defendant in error.

Before DALLAS and BUFFINGTON, Circuit Judges, and BRADFORD, District Judge.

BRADFORD, District Judge. This writ of error has been taken in an action of ejectment brought by Albert G. Spalding, the defendant in error, against David Lamar, the plaintiff in error, for the recovery of certain land in Monmouth County, New Jersey. The action was brought in Monmouth County circuit court, but was subsequently removed to the court below where Spalding recovered final judgment for the possession of the land June 6, 1906. It appears from the transcript of record that the land in question was conveyed June 10, 1893, by Alice C. Strong and William E. Strong, her husband, to Spalding, who mortgaged the same June 12, 1900, to Mrs. Strong to secure the payment of $50,000; that April 25, 1901, Spalding and his wife conveyed the land to Bernard Smith, and thereupon Smith mortgaged the same to Spalding to secure the payment of $29,000; that about a month afterwards Smith executed to Lamar a lease of the land for a term of five years; that the land was sold by the Sheriff in foreclosure proceedings instituted by Mrs. Strong in the Court of Chancery of New Jersey on the above mentioned mortgage executed to her by Spalding, the latter becoming the purchaser; and that the sheriff executed a deed of the land to Spalding as such purchaser. Lamar, notwithstanding the execution of the sheriff's deed, continued to hold possession of the land sold, and Spalding applied by petition to the Court of Chancery for a writ of assistance to dispossess Lamar and gain possession as purchaser. While Lamar was not a party to the foreclosure suit proper, he appeared and became a party to the proceeding for the writ of assistance. Full opportunity was granted to both Lamar and Spalding to adduce evidence and be heard for and against the application, and a large amount of evidence on the subject was in fact taken. The Court of Chancery in an elaborate opinion held February 15, 1905, that Spalding had "a clear right" to possession as against Lamar. Strong v. Smith, 60 Atl. 66, 68 N. J. Eq. 686. On appeal the Court of Errors and Appeals affirmed the order of the Court of Chancery August 2, 1905. 63 Atl. 493, 68 N. J. Eq. 686. The court, among other things, said:

"Of course, it is necessary that the rights of the person from whom possession is sought should, in some lawful mode be subjected to the jurisdiction of the court. Ordinarily this is done by making him a party to the suit in which the decree to be enforced is rendered. But it may be done by giving him notice of the possessory proceeding instituted on the basis of the decree or by his appearance in such proceeding. If, when he is then brought in, it is clearly shown that he claims under one who was a party to the suit and that his right of possession is undoubtedly subordinate to the right for the enforcement of which the writ of assistance is prayed, then it may be issued against him, even though technically he is not bound by the decree. Such is the situa-

tion of the present appellant and there is no reasonable ground of equity on which the court can refuse its aid to the petitioner against him."

Subsequently the case was carried by writ of error to the Supreme Court of the United States which, November 19, 1906, affirmed the judgment of the Court of Errors and Appeals. 203 U. S. 584, 27 Sup. Ct. 782, 51 L. Ed. ——. The Supreme Court in its judgment of affirmance referred to and followed Louisville & Nashville Rd. Co. v. Schmidt, 177 U. S. 230, 20 Sup. Ct. 620, 44 L. Ed. 747, where the court used the following language:

"It is no longer open to contention that the due process clause of the fourteenth amendment to the Constitution of the United States does not control mere forms of procedure in state courts or regulate practice therein. All its requirements are complied with, provided in the proceedings which are claimed not to have been due process of law the person condemned has had sufficient notice and adequate opportunity has been afforded him to defend."

Spalding did not bring his action of ejectment against Lamar in the Monmouth County circuit court until August 4, 1905, but had applied to the Court of Chancery for the writ of assistance and Lamar had appeared in opposition in the fall of 1904. The Court of Chancery, therefore, long prior to the institution of the present suit, assumed and exercised full jurisdiction over both the parties and the subject-matter. Indeed, it was not until after the decision of the Court of Errors and Appeals that the action of ejectment was commenced; Lamar still continuing in possession pending the determination of the case by the Supreme Court on writ of error. His five-year lease expired before the trial in the court below. The foregoing facts appear partly from the transcript of record and partly by the statement of counsel not only in their oral arguments but in their printed briefs in this court.

The first assignment of error is based upon the refusal of the court below to stay the trial until the final determination of the application for the writ of assistance. We shall assume, although it is not stated, that this assignment refers to a determination by the Supreme Court. The question is thus presented whether the pendency of the litigation touching the writ of assistance operated as a bar or stay either temporarily or permanently the prosecution of the action of ejectment. There is a clear statement of the principles controlling the actions of courts of co-ordinate jurisdiction for the avoidance of conflict in Farmers' Loan & Trust Co. v. Lake St. Rd. Co., 177 U. S. 51, 20 Sup. Ct. 564, 44 L. Ed. 667. The court there said:

"The possession of the res vests the court which has first acquired jurisdiction with the power to hear and determine all controversies relating thereto, and for the time being disables other courts of co-ordinate jurisdiction from exercising a like power. This rule is essential to the orderly administration of justice, and to prevent unseemly conflicts between courts whose jurisdiction embraces the same subjects and persons. Nor is this rule restricted in its application to cases where property has been actually seized under judicial process before a second suit is instituted in another court, but it often applies as well where suits are brought to enforce liens against specific property, to marshal assets, administer trusts or liquidate insolvent estates, and in suits of a similar nature where, in the progress of the litigation, the court may be compelled to assume the possession and control of the property to be affected."

We do not regard the rule as applicable to the case before us. It is true that the application for the writ of assistance had for its object the putting of Spalding in possession and the dispossessing of Lamar, and that the action of ejectment was brought for the same purpose. But the foreclosure suit proper was terminated by decree, sale and execution of sheriff's deed, and need not be considered in this immediate connection. What we have to deal with at this point is the relation between the application for the writ of assistance and the action of ejectment. Neither of them was a suit or proceeding to enforce a lien against specific property, or to marshal assets, or to administer a trust, or to liquidate an insolvent estate, nor was it, within the meaning of the rule, a suit or proceeding of a "similar nature where, in the progress of the litigation, the court may be compelled to assume the possession and control of the property to be affected." Nor was the application a proceeding whereby the land had been actually or constructively seized or taken possession of under judicial process. Nor was the maintenance of the action of ejectment calculated to produce conflict between the court below and the state courts. If Spalding ultimately failed to gain possession by the writ of assistance and succeeded in the ejectment suit no conflict of judicial authority could have resulted. Or if he gained possession under the writ of assistance and failed in his ejectment suit there would have been no conflict. So, if he should either fail or succeed in both proceedings no conflict could have arisen. The broad purpose of the rule is to prevent unseemly conflicts between courts, destructive of or detrimental to an orderly administration of justice. It is aimed against the clashing of writs or other judicial process emanating from the respective courts, and the confusion, embarrassment and practical difficulties resulting from an antagonistic assertion of authority on the part of courts or their officers touching the control and disposition of property or persons within their general jurisdiction. It is well settled that in the absence of circumstances requiring the application of the above rule, the pendency of a prior suit in a state court is no bar, temporary or permanent, to the prosecution of a subsequent suit in a circuit court of the United States between the same or different parties for the same cause of action or involving the same subject-matter. Stanton et al. v. Embrey, Adm'r, 93 U. S. 548, 23 L. Ed. 983; Gordon v. Gilfoil, 99 U. S. 168, 25 L. Ed. 383; City of Mankato v. Barber Asphalt Paving Co., 142 Fed. 329, 73 C. C. A. 439; Barber Asphalt Pav. Co. v. Morris, 132 Fed. 945, 66 C. C. A. 55, 67 L. R. A. 761; Ogden City v. Weaver, 108 Fed. 564, 568, 47 C. C. A. 485; Consumers' Gas Trust Co. v. Quinby, 137 Fed. 882, 70 C. C. A. 220; Baltimore & O. R. Co. v. Wabash R. Co., 119 Fed. 678, 57 C. C. A. 322. The crucial point in each case is whether, under the circumstances, the prosecution of the second suit during the pendency of the first involves an unseemly or improper interference with the rightful jurisdiction of the court entertaining the first suit. Where no such interference occurs or is threatened the second suit may proceed regardless of any difference of opinion between the two tribunals as to the ultimate determination which should be made as to the rights of person or of

property involved in the litigation. We know of no case similar in its facts to this. Those cited on behalf of the plaintiff in error seem to us clearly distinguishable. One of them, however (Orton v. Smith, 18 How. 263, 15 L. Ed. 393), strongly indicates that the action before us is not within the prohibition of the rule. There it was held that the courts of the United States should not entertain a bill in the nature of a bill of peace upon a title in litigation in a state court. It there appeared that Orton, having become the owner of a title-bond for the conveyance of certain land, filed a bill in the court of chancery of Wisconsin to compel the conveyance of the legal title to the land in question and that during the pendency of that suit Smith, claiming to be the owner of the land, filed in the District Court of the United States for the District of Wisconsin a bill in the nature of a bill of peace praying an injunction against Orton to restrain him from setting up his claim of ownership and thereby casting a cloud upon the title claimed by Smith. The District Court decreed in favor of Smith. The Supreme Court, after declaring that a decree on a bill of peace concludes the rights of the parties to it with respect to the title, because it should put an end to all litigation between them, said:

"If they have suits pending in other courts, on the same question of title, they must cease. This bill acts by injunction on the party—no injunction ever goes to the court having a concurrent jurisdiction of the question. The courts of the United States have no such power over suitors in a state court. But a decree on a bill of peace which does not put an end to litigation is a mere brutum fulmen. Unless the court can make a decree which it can execute, it is a sufficient reason for refusing to take cognizance of the case. It is a rule absolutely necessary to be observed by courts who have a concurrent jurisdiction, that in all cases 'where the jurisdiction of a court and the right of a plaintiff to prosecute his suit in it have once attached, that right cannot be arrested or taken away by proceedings in another court.' This rule it is said. 'has its foundation not merely in comity, but in necessity. If one may enjoin, the other may retort by injunction, and thus the parties be without remedy.' * * * If the decree in this case can be of any value whatever, let us look at the consequences which may possibly and probably will arise, in case it is enforced. * * * When the sheriff puts Orton in possession under the decree of the state court, and expels Smith, the Circuit Court, by its officer, must replace Smith, or imprison Orton for a contempt. This would, indeed, be a humiliating spectacle. Such a disreputable collision of jurisdictions should be sedulously avoided. This can only be done by refusing to entertain a bill of peace for an injunction when the title is in litigation in a court of concurrent jurisdiction; otherwise, the result of a bill of peace may be not peace but war; and, instead of dispelling a 'cloud' from the title of either party, will doubly increase the darkness and difficulty with which it was environed."

But the court also, distinguishing an action of ejectment from a bill of peace, said:

"It is true, if this were an ejectment in a court of law, the pendency of another ejectment between the same parties might not have afforded sufficient ground for a plea of auter action pendent; nor would the court have been bound, even by comity, to await the decision of the state court, or suffer the cause pending before them to be in any way affected by it."

We do not think there was anything in the present action, especially in view of the fact that the plaintiff in the ejectment was also the petitioner for the writ of assistance, calculated to delay or im-

pede the state courts in the exercise of their jurisdiction, nor to produce contention between courts, and consequently are of opinion that the first assignment of error must be overruled.

The ninth assignment is to the effect that there was error as the court below was without jurisdiction to render any judgment in the case. This assignment is covered by the considerations applicable to the first and is, therefore, overruled. The second, third, fourth and fifth assignments all relate to the existence of power in the court below to allow on the trial amendments of the bill of particulars theretofore filed by the plaintiff in order that certain evidence deemed material as bearing on title might be introduced. We have no doubt of the existence of authority in the court below in the exercise of a sound discretion to permit a bill of particulars in an action of ejectment to be amended at the trial. The plaintiff in error contends for too narrow a construction of the statutory provisions relating to the subject. Only one of the remaining assignments merits serious consideration. It is the sixth, which is based on the direction of the court below to the jury to render a verdict in favor of the plaintiff and against the defendant. As before stated, the object of both the writ of assistance and this suit was the recovery of possession of the land in question. The counsel for Lamar in his brief says:

"The sole relief prayed in this suit was the recovery of possession of the property bought at the foreclosure sale. Precisely the same relief had been prayed by the same plaintiff in his proceedings in the said court for a writ of assistance, and the state court had granted said relief. On appeal, the Court of Errors and Appeals had affirmed the order granting said relief. Spalding was therefore pursuing two distinct proceedings for the same purpose, one in the courts of the state and the other in the federal courts."

Lamar, having appeared and become a party to the proceedings for the writ of assistance and adduced evidence and been heard, had his day in court, and was regarded by the Supreme Court as well as the state courts as not having been denied due process of law as guaranteed by the Constitution. The state courts having decided that Spalding was entitled to possession as against Lamar and their decision having been affirmed by the Supreme Court, and the questions on the merits presented in this suit having been involved in the determination reached with respect to the writ of assistance, we do not feel at liberty to hold that Spalding is not entitled to possession. If the instruction given by the learned district judge to find for the plaintiff was erroneous as matters then stood it must, in view of subsequent events, be treated as harmless error. Under the circumstances the judgment of the court below should be affirmed with costs, and it is so ordered.