BORDEN'S CONDENSED MILK CO. v. BAKER et al.

(Circuit Court of Appeals, Third Circuit. April 18, 1910.)

No. 76 (1,266).

**1.** ABATEMENT AND REVIVAL (§ 12*)—FEDERAL COURTS—PENDING SUIT IN STATE COURT.

Pendency of a prior suit in a state court is neither a temporary nor a permanent bar to the prosecution of a subsequent suit in a Circuit Court of the United States between the same or different parties for the same cause of action or involving the same subject-matter; complainant being entitled to apply to both courts for relief and, subject to certain qualifications, to prosecute both proceedings at its election until in one of them final satisfaction shall be either obtained or refused.

[Ed. Note.—For other cases, see Abatement and Revival, Cent. Dig. § 87; Dec. Dig. § 12.*

Pendency of action in state or federal court as ground for abatement of action in the other, see notes to Bunker Hill & Sullivan M. & C. Co. v. Shoshone M. Co., 47 C. C. A. 205; Barnsdall v. Waltemeyer, 73 C. C. A. 521.]

**2.** COURTS (§ 262*)—FEDERAL COURTS—REMEDY AT LAW IN STATE COURT.

The existence of a remedy at law in a state court does not oust a federal court of jurisdiction in equity, under the rule that a federal court of equity, following the chancery precedents, does not inquire concerning the remedies available in a state court, but whether a federal court of law offers an adequate remedy, which inquiry is confined to the remedies in the

---

federal courts, regardless of the antiquity of the remedies offered by the state.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 262.*]

**3. INJUNCTION (§ 85*)—ADEQUATE REMEDY AT LAW—STATE COURT—CERTIORARI.**

> Since a writ of certiorari will not issue out of a federal court, except in aid of such court's jurisdiction, and is not available to review and annul an alleged invalid municipal ordinance, the fact that under the state practice such a writ had been available for that purpose since 1789 did not afford complainant an adequate remedy at law, precluding it from maintaining a suit to restrain the enforcement of such ordinance in the federal court, though it had previously instituted certiorari proceedings in the state court to the same end.

> [Ed. Note.—For other cases, see Injunction, Cent. Dig. § 156; Dec. Dig. § 85.*]

Appeal from the Circuit Court of the United States for the District of New Jersey.

Suit by Borden's Condensed Milk Company against Moses N. Baker and others. From an order sustaining a demurrer to the bill (168 Fed. 111), complainant appeals. Reversed, with directions.

Gilbert Collins, for appellant.
Edward M. Colie, for appellees.

Before BUFFINGTON, Circuit Judge, and McPHERSON, District Judge.

J. B. McPHERSON, District Judge. Under a general statute the local boards of health of the state of New Jersey apparently possess the power to pass ordinances forbidding the sale of "milk containing any unhealthy ingredient, constituent or substance, or which has been transported or stored in an unclean manner or place, or which is produced from cows which are diseased or which are kept or stabled under unhealthful conditions." Acting under this authority the defendants—who constitute the board of health of the town of Montclair—adopted an ordinance on April 9, 1907, which contains, inter alia, the following provisions:

"Sec. 5. Cows and Feed. (a) No milk shall be sold or offered for sale or distributed in the town of Montclair except from cows in good health, nor unless the cows from which it is obtained have within one year been examined by a veterinarian whose competency is vouched for by the State Veterinary Association of the state in which the herd is located, and a certificate signed by such veterinarian has been filed with the board of health stating the number of cows in each herd that are free from disease. This examination shall include the tuberculin test and charts showing the reactions of each individual cow shall be filed with this board. All cows which react shall be removed from the premises at once if the sale of milk is to continue, and no cows shall be added to a herd until certificates of satisfactory tuberculin tests of said cows have been filed with this board."

"Sec. 8. Cream. No cream shall be sold, exposed for sale or delivered within the town of Montclair unless it be produced and handled in accordance with the requirements hereinbefore set forth for the production and handling of milk."

"Sec. 9. Any person violating any of the provisions of this article shall upon conviction thereof forfeit and pay a penalty of twenty-five dollars for each offense."

The complainant is a New Jersey corporation extensively engaged in producing, distributing and selling milk and milk products. Among the communities where its business is carried on is the town of Montclair. The milk and cream thus supplied come by rail from Oxford, in the state of New York, where the complainant buys it from farmers and dairymen. Its business in Montclair is large and increasing, and calls for the ownership and use of real and personal property valued at say $25,000, and for the employment (there and in Oxford) of about 50 men. As will be noticed, the ordinance in question requires a tuberculin test to be applied to all cows whose milk is sold in Montclair, and it is this requirement that is chiefly objected to. The grounds of the objection need not be stated here. It is enough to say that they are fully set out in the bill, and that one result of enforcing the test, or of imposing the penalties for disobedience, will be (so the complainant declares) to compel it to abandon its business in Montclair. This, it is averred, would take away its property without due process of law, and would also deny it the equal protection of the laws. Moreover, the obnoxious provisions of the ordinance are also denounced as in violation of the commerce clause of the federal Constitution, because they are said to regulate and interfere with commerce between the states of New York and New Jersey, by imposing an unreasonable, inefficient, and injurious test with which importers of milk from New York into New Jersey cannot comply, and with which those persons in New York and other states who sell to such importers will not comply. It is further objected that, if the imposition of the tuberculin test shall be upheld as constitutional, the board may impose penalties of more than twenty million dollars annually, and the penalty provisions are therefore attacked as illegal and excessive, threatening the complainant with ruin unless a court of equity shall interfere. Accordingly, the bill prays for process against the board of health, and for a decree (1) that the foregoing provisions of the ordinance be declared void because they violate the federal Constitution in the particulars referred to; (2) that the complainant has no adequate remedy at law; and (3) that a permanent injunction may issue restraining the board from enforcing the tuberculin test and from imposing the penalty provided for disobedience.

The bill was filed on July 13, 1908. It does not ask for a preliminary injunction, and no such motion has at any time been made; the reason no doubt being that on May 9, 1908, the complainant had already sued out a writ of certiorari from the Supreme Court of New Jersey in which so much of the ordinance as imposes the tuberculin test is attacked, not only on the federal grounds just referred to, but also on other grounds which a state court alone should be asked to consider. Under the New Jersey practice, the allowance of the certiorari stayed the enforcement of the ordinance until the state Supreme Court should determine the case, and it is therefore apparent that no preliminary action of the Circuit Court was needed to protect whatever rights the complainant might be entitled to enjoy under the federal Constitution. In September the board of health filed (and afterwards amended) a plea to the present bill, of which the material averment is that the proceeding by certiorari furnished a complete and

adequate remedy at law.   As a reason for this position the plea states that all the complainant's objections that are set up in the bill are also set up in the other proceeding, and may therefore be decided at law. The learned judge of the Circuit Court was of opinion that the plea should be sustained, giving these reasons for his conclusion:

"Before the complainant filed its bill in this court, it chose the Supreme Court of the state of New Jersey as the forum in which it would test the validity of the ordinance. The objections to the ordinance there assigned include those assigned here. It obtained from that court an order staying the enforcement of the ordinance as against it up to the time of final decision upon the writ. In other words, it secured from the New Jersey court an injunction against the enforcement of the ordinance until final judgment should be entered by that court. That proceeding is still pending. The injunction in its favor is still operative. What equitable right, then, has it to another injunction from this court? There is no pretense that the local board of health, or any of its members or agents, intend to do anything, during the pendency of the certiorari proceedings, that will in any wise interfere with the business of the complainant. If this court should be of the opinion that the provisions of the ordinance complained of are void, and that the complainant ought to be protected against the enforcement of those provisions, the practical effect of an injunction issued now would be merely to afford that protection at some time in the future if the Supreme Court of New Jersey, differing with this court, should conclude that the complainant is not entitled to protection. I have not heard that any court has ever granted any such provisional, conditional, or contingent injunction. Counsel for the defendants admit, in their brief, that 'until final determination the operation of the ordinance is suspended by virtue of the writ of certiorari and by virtue of the special order of the New Jersey Supreme Court.' The complainant seeks an injunction from this court for the protection of its property rights. Those rights are not now in jeopardy. No suit against the complainant for the enforcement of the ordinance has been commenced. None can now be commenced. None can ever be commenced, unless it be ultimately decided in the certiorari proceedings that the ordinance is valid, or that the writ of certiorari should be dismissed. Whether, if such a decision be rendered, the complainant will then be entitled to injunctive relief, is a question not now to be decided. The present facts show that the case is not one in which the extraordinary remedy by injunction can now be properly invoked."

Accordingly the bill was dismissed, and the present appeal complains of that decree.  As it seems to us, the court below went too far.  Much, perhaps all, that was said by the learned judge would have been pertinent upon a motion for a preliminary injunction, and we do not decide that such an injunction might not have been properly refused. But it seems to have been overlooked that no motion for a preliminary injunction had been made, and therefore that none was presented for consideration.   It is true that a permanent injunction is prayed for; but the bill merely looks forward to this as the final step after answer and a hearing, and this stage in the litigation had not yet been reached. To dismiss the bill as a consequence of the plea means that the complainant cannot even begin an action looking ultimately to an injunction in the federal courts—or at all events can carry on no such action —as long as the writ of certiorari is pending; and to this proposition we are not prepared to assent.  Judge Bradford, speaking for the Court of Appeals of the Third Circuit in Lamar v. Spalding, 154 Fed. 30, 83 C. C. A. 114, and citing ample authority for his statement, declares the general rule to be that:

"The pendency of a prior suit in a state court is no bar, temporary or permanent, to the prosecution of a subsequent suit in a Circuit Court of the United States between the same or different parties for the same cause of action or involving the same subject-matter."

If this rule be applied, it will be seen that the proceeding by certiorari did not prohibit the complainant from bringing the present action in the Circuit Court unless some special reason exists to support the prohibition. The complainant had a right to apply for relief to both courts, and (subject perhaps to some qualifications not now material) it could go on with both proceedings pari passu, until in one of them final satisfaction should be either obtained or refused.

But the appellee contends that this general rule does not govern the present situation, because the writ of certiorari in New Jersey is an ancient remedy, old enough to antedate the federal Constitution and the judiciary act of September 24, 1789 (1 Stat. 73, c. 20), and therefore furnishes the adequate remedy at law that deprives the Circuit Court of jurisdiction to entertain the bill. In our opinion, however, the antiquity of the New Jersey writ is not so vitally important as the appellees seem to suppose. It may be true that in the year 1789 a New Jersey Court of Chancery could not have taken jurisdiction of a controversy in which the writ of ceritorari would have furnished an adequate remedy in a New Jersey court of law. But it does not follow that the writ would have been equally restrictive at that date, or is equally restrictive now, upon the equity jurisdiction of the federal courts. As it seems to us—so far as concerns the present question—the jurisdiction of the Circuit Court in equity depended then, as it depends now, upon the existence or nonexistence of an adequate remedy at law available in the federal courts themselves, and did not, as it does not, depend upon the question whether an adequate remedy at law existed in the courts of New Jersey in the year 1789. To hold that the existence of a remedy at law in a state court ousts the federal jurisdiction in equity would undoubtedly tend to destroy the uniformity of such jurisdiction. For example, such an ordinance as is now in question could not be attacked in the Circuit Court sitting in New Jersey, and perhaps in other states, because the ancient writ of certiorari, or some other ancient remedy at law, might be available; while in all the states that have been admitted to the Union since 1789 the equitable attack could not be prevented, even if the identical remedy at law should have been adopted by a statute of the state. As it seems to us, certain language in some of the cases has been misunderstood, and it may therefore be as well to state briefly what we understand to be meant by the adequate remedy at law that will prevent a federal court of equity from taking jurisdiction. Such a court has an equitable jurisdiction (unless changed by Congress) similar in extent to the jurisdiction that belonged to the English chancery in 1789. Among the cases in which the chancery exercised jurisdiction were certain controversies for which no adequate remedy existed in the English courts of law. The chancery did not inquire whether the complainant could obtain redress in a foreign court, but whether an English court of law could fully deal with the situation. So a federal court of equity, following the chancery

precedents, does not inquire about the remedies available in a state court (which for this purpose is a foreign tribunal), but whether a federal court of law offers an adequate remedy; and this inquiry is confined to the remedies in the federal courts, no matter how ancient may be the remedies offered by the state. Congress may, of course, change the federal remedies from time to time; the change may be made by original legislation, or by adopting the remedies of the state; but the test is always whether the remedy under examination is available in the federal courts. If it is not, its existence does not affect the equitable jurisdiction of the Circuit Court. As we understand the decisions, these rules have been applied from the beginning of the federal jurisprudence, and have not been departed from in any authoritative decision. In support of this statement we refer to the following cases, among many others: Payne v. Hook, 74 U. S. 425, 19 L. Ed. 260; McConihay v. Wright, 121 U. S. 201, 7 Sup. Ct. 940, 30 L. Ed. 932; Whitehead v. Shattuck, 138 U. S. 146, 11 Sup. Ct. 276, 34 L. Ed. 873; Smyth v. Ames, 169 U. S. 516, 18 Sup. Ct. 418, 42 L. Ed. 819; Taylor v. Louisville, etc., R. R., 88 Fed. 358, 31 C. C. A. 537, and cases cited in 1 Rose, Fed. Proced. § 935 (f) and (g), and in 1 Foster, Fed. Prac. (3d Ed.) p. 9, § 5. Special reference may be made, also, to Barber Asphalt Co. v. Morris, 132 Fed. 945, 66 C. C. A. 55, 67 L. R. A. 761, in which Judge Sanborn discusses the subject elaborately and cites the authorities with fullness.

Against these authorities we know of little, if any, opposing expressions of opinion, except a doubtful sentence or two in Ewing v. St. Louis, 72 U. S., on page 419, 18 L. Ed. 657, and Pa. R. R. Co. v. National Docks Co. (C. C.) 56 Fed. 697. The paragraph in Ewing v. St. Louis is as follows:

"The complainant can ask no greater relief in the courts of the United States than he could obtain were he to resort to the state courts. If, in the latter courts, equity would afford no relief, neither will it in the former."

This is certainly capable of the meaning that the federal courts offer the same kind of relief as is offered in the courts of a state; and, thus understood, it is in harmony with the cases already cited. If it means what the appellee argues, it seems to be an inadvertent statement; for it would then be inconsistent with both earlier and later decisions of the same tribunal, and in that event we venture to believe it may be safely disregarded. The case of Pa. R. R. v. Docks Co., which was decided in this circuit, rests upon the supposed authority of Ewing v. St. Louis.

It only remains to add that the writ of certiorari is not available in the federal courts of law, except where it is necessary to be used in aid of their jurisdiction. Ex parte Vallandingham, 68 U. S. 243, 17 L. Ed. 589; U. S. v. Young, 94 U. S. 258, 24 L. Ed. 153; American Construction Co. v. Jacksonville, etc., Ry., 148 U. S. 372, 13 Sup. Ct. 158, 37 L. Ed. 486; and Taylor v. Railway Co., 88 Fed. 358, 31 C. C. A. 537. It cannot be employed by the Circuit Court to bring up for review and possible annulment the validity of a municipal ordinance such as is now in question.

The decree is reversed with costs, the bill is reinstated, and the Circuit Court is directed to overrule the plea and to take such other steps in the cause as are not inconsistent with this opinion.

NOTE.—See, also, McClellan v. Carland (Sup. Ct. U. S., decided April 11, 1910) 30 Sup. Ct. 501, 54 L. Ed. ——.