STANDARD OIL CO. v. HOWE et al.   (No. 3248.)

(Circuit Court of Appeals, Ninth Circuit.   May 5, 1919.   Rehearing Denied
June 6, 1919.)

1. TAXATION ⟨KEY⟩168—FOREIGN OIL COMPANY—FAILURE TO FIX CASH VALUE
OF INCOME—"INTANGIBLE PROPERTY."

Under Civ. Code Ariz. 1913, par. 4834 et seq., requiring the assessment
of all taxable property at its full cash value, the tax commission and
board of equalization of Arizona had no authority to ignore the cash
value of a foreign oil company's property and to tax its intangible prop-
erty, fixed with an arbitrary value by capitalizing at 25 per cent. its
earnings or income, by assessing the valuation against the company gen-
erally, not upon any specific items of its property; there being no au-
thority for taxation of earnings, while "intangible property" includes
only franchises, credits, choses in action, and the like.

[Ed. Note.—For other definitions, see Words and Phrases, First and
Second Series, Intangible Property.]

2. TAXATION ⟨KEY⟩498—RESTRAINING ASSESSMENT—INADEQUACY OF LEGAL REME-
DY—MULTIPLICITY OF SUITS.

Where an oil company, whose "intangible property" was improperly and
illegally assessed by the Arizona tax commission and the board of equali-
zation of the state, would become involved in a multiplicity of suits in-
volving a common question of law if it attempted to utilize any remedy
under Civ. Code Ariz. 1913, par. 4887, it is entitled to equitable relief by
injunction against the tax commission and the board of equalization.

3. COURTS ⟨KEY⟩335(1)—FEDERAL COURTS—CONTROL OF STATE STATUTE—COLLEC-
TION OF TAX—INJUNCTION.

The federal courts, in the exercise of their equity jurisdiction, are not
bound by Civ. Code Ariz. 1913, par. 4939, forbidding injunction against
the state or any officer to prevent the collection of a tax levied under pro-
visions of law.

4. TAXATION ⟨KEY⟩397—OIL COMPANIES—UNIT RULE—STATUTES.

Civ. Code Ariz. 1913, pars. 4951–4979, providing for the unit rule of
value in the taxation of private car lines, railroad property, and tele-
graph and telephone lines, do not authorize the unit rule valuation for
taxation of the property of a foreign oil company, or for the distribu-
tion of the unit value between counties in which the property is situated.

Appeal from the District Court of the United States for the Dis-
trict of Arizona; William H. Sawtelle, Judge.

Suit by the Standard Oil Company, a corporation, against Charles R. Howe
and others, members of the Tax Commission and of the Board of Equalization
of the State of Arizona, and others.  From a decree denying prayer for in-
junction and sustaining defendants' motion to dismiss the bill of complaint,
plaintiff appeals.  Decree denying the writ and dismissing the bill reversed,
and cause remanded, with instructions to issue a temporary injunction.

The Standard Oil Company, a California corporation, has appealed from
a decree of the District Court of Arizona denying appellant's prayer for a
temporary injunction and sustaining the appellee's motion to dismiss its bill of
complaint.  The question presented involves the validity of the action of the
state board of equalization of Arizona in ordering the assessed value of the
property of the Standard Oil Company for the year 1917 to be increased from
$342,706, as fixed by the county assessing and equalizing authorities, to $2,-
019,597.64.  The facts as substantially stated by the complaint are these:

The Standard Oil Company owns real estate, motor trucks, sales stations,
and like property in various counties in the state of Arizona.  The full cash
value of the property on January 1, 1918, was $342,706.  California is the state
of corporate domicile, and the corporation owns, within the state of California,
pipe lines, refineries, oil wells, and properties of the value of more than $40,-

000,000. It manufactures gasoline, engine distillate, lubricating oil, and by-products of petroleum in California, and sells and disposes of such products in California and other states and territories in interstate commerce. The Arizona board of equalization determined that appellant's net profits on its Arizona sales for 1917 were $727,649.41. It proceeded then to capitalize those earnings at 25 per cent., and thus produced a total value of $2,910,597.64. From this last-named sum the amount of $342,646, or the value that had been put upon the properties by the county authorities, was deducted, and the difference became the increase complained of in this proceeding. The state board ordered the increase upon all of appellant's property en masse, without any specific increase as to any particular piece or item or class of property.

The complaint alleges that it was not found or determined by the board that any particular item or class had been undervalued by the county authorities, or that any increase in valuation was necessary for any purpose for equalizing taxes or valuation. In a communication to appellant, the board stated that intangible property was made assessable in Arizona, and the method of arriving at the intangible value of the property of the Standard Oil Company was by deducting the net income for 1917 in Arizona, as per the sworn report of the corporation, and deducting therefrom the federal tax paid, which would leave the true net business of the company in Arizona for 1917 as $727,649.41. The board also wrote as follows: "Assuming that this class should earn 25 per cent. net on its assessed valuation, and capitalizing the above true net income at 25 per cent., the total valuation shown, both tangible and intangible, is $2,910,597.64. Deducting from this figure the total amount of your assessments in the several counties, amounting to $342,646, leaves a balance of $2,567,951.64, the amount of the raise." The board advised the company that other oil companies and classes of property were similarly treated, and after specification of certain itemized classifications the letter continued: "From the above table you will note that oil companies are placed in the highest classification and are allowed to earn 25 per cent. on their assessed value, while railroads are only allowed 8 per cent., banks 12½ per cent., and producing mines and smelters 15 per cent."

After arriving at the valuation as outlined, the board effected a distribution of this valuation increase among the 13 counties of the state. The method employed was to require the corporation to segregate its gross sales made in the several counties, respectively, and upon the basis of such segregation it was ordered that the total increase be divided among the counties in the proportion of their several contributions to the corporation's gross sales, without reference to actual value of the properties involved. The board then directed the various county authorities to enter the increase upon their assessment rolls, respectively, and to use this language: "Tangible and intangible valuation on property above enumerated, as set forth in section 4847, Revised Statutes of Arizona 1913, Civil Code, based on excessive earnings." County authorities conformed to the order of the state board, and the state board proceeded to levy taxes for 1917, and fixed the rate for state purposes at 39 cents for each $100 of assessed valuation. The county authorities in turn proceeded to complete and make the levies accordingly for county, school, and municipal purposes. The state board, however, failed to instruct the county board how to distribute the increase among the several incorporated towns, cities, school districts, and local assessment districts within their several limits. As a result the county authorities extended the raise upon the assessment roll in gross, without division or distribution thereof among or between appellant's real estate or improvements thereon, or personal property, leaving such real and personal property listed and assessed for state and county purposes at the valuation originally placed thereon by the county authorities, adding thereto, however, the form of entry specified by the state board and heretofore quoted. In the distribution of the increase for town, city, and other local assessment purposes, the county authorities split up and distributed the raise among such subdivisions in a manner devised to suit themselves, and as a result it is said to be impossible to ascertain the total valuation intended to be placed or the amount of taxes actually levied upon any article, part, piece, or parcel of appellant's property, whether real or personal, and whether for state, county, municipal, school, or other local uses.

The actual figures used by the state board in making up the increase were

taken from a financial report filed by the Standard Oil Company with the state tax commission on May 1, 1918, as authorized by section 4829, subdivision 6, Revised Statutes of Arizona 1913. That report shows a total income from gross sales of $5,299,168.65, made up of sales of fuel oil, $2,164,-631.63, gasoline, $2,129,008.36, and other products, $1,005,528.66. All of the fuel oil was sold and delivered by appellant pursuant to contracts negotiated with the purchasers outside of the state of Arizona and was loaded and delivered by it to the purchasers on cars at appellant's distributing points in California, and thence transported by common carriers direct to the consignee in Arizona, without being handled by any of appellant's Arizona branches or agencies. All of the gasoline and other products, except as stated in the complaint, were refined and produced by appellant in California, and were shipped to Arizona to be there sold and delivered direct to purchasers and consumers. Part of the gasoline and other products, of the value of $217,453.52, were loaded and delivered by appellant to purchasers thereof on board cars at appellant's plants and distributing points in California, and were transported directly by common carriers to the purchasers in Arizona, pursuant to sales negotiated in Arizona, but without passing through or being handled by any of appellant's branches or agencies. A large part of the gasoline and of the other products were sold and distributed by appellant in Arizona in the original packages and containers in which the same had been placed by it at its plants and manufactories in California. The item of $951,378.82, net income from operations shown on the report of the corporation, represents the net profit derived by the corporation from its plants, properties, and equipment in the production, purchase, transportation, refining, and manufacture of products in California, and includes the profits accruing to appellant through the operation of its sales plants and agencies, both in California and Arizona.

The corporation alleges that the action of the board was willful, arbitrary, and constructively fraudulent; that the order for the increase was made upon an assumed earning capacity, which includes the earnings and income produced in California, as well as in Arizona; and that the effect of the action of the board is to tax in Arizona property situate in California, as well as to tax the appellant's transaction of interstate commerce business.

Appellant appeared before the state board of equalization and protested against the raise complained of, but the increase was ordered.

The corporation alleges that, if it should pay the taxes assessed, it would have no remedy at law for the recovery of any money so paid; that, if remedy is available, it would have to prosecute suits against many counties, towns, and cities, all of which would depend upon a common question of law arising upon the same facts as are here set forth by appellant; that payment under duress of threatened distraint would involve the payment of interest, costs, and penalties not thereafter recoverable in any proceeding, and that upon failure to pay the taxes here involved they would become delinquent, and the county officials would proceed to enforce the tax liens, with interest, costs, and penalties, and appellant would suffer great damage and be subjected to many suits. Appellant tenders taxes upon the cash value of appellant's properties in Arizona, and prays that, being without adequate remedy at law, the increase complained of be decreed to be void and in contravention of the federal Constitution.

A clear understanding of the issues requires reference to the Arizona statutes concerning taxation. The Constitution of the state (section 12, article 9) vests in the Legislature authority to provide for the levy and collection of license, franchise, gross revenue, excise, and income taxes, and graduated income taxes.

The state tax commission, created in 1912, derives its authority from chapter 1 of title 49, Revised Statutes of Arizona 1913, as amended by the Laws of 1915 (Laws 1915, c. 22) and 1917 (Laws 1917, c. 37). The commission has supervision of the system of taxation and over the administration of the assessment of taxes in the state and over city, town, and local boards and officials having to do with the assessment of property. It may assess the "property, franchise and all intangible values" of railroad and tele-

graph and telephone corporations, excepting certain nonoperating properties and certain public service corporations.

The state board of equalization, created by the Laws of 1913 (chapter 2 of title 49, and particularly paragraph 4834 of the Statutes of Arizona), has full authority to equalize the value and assessments of property throughout the state, and to equalize the assessments of all property in the state between persons, firms, or corporations of the same assessment district, between cities and towns of the same county, between the different counties of the state, and the property assessed by the state tax commission in the first instance. The board of equalization fixes the rate of taxation for state purposes to be levied and collected in each county, examines and compares abstracts, and equalizes assessments, so that all the taxable property in the state shall be assessed at its full cash value subject to rules specified in paragraph 4834 of the statutes. The board of equalization may increase the individual assessments which appear to be too low, first giving notice to the individuals or corporations of their intention to do so. The board is required to transmit to the various county boards of supervisors statements of changes, together with the rates of taxes to be levied and collected.

County taxes are under the supervision of the respective county boards of supervisors. The statutes (paragraph 4846) require that all property in the state, except specifically exempted property, is subject to taxation, but there shall be no double taxation. By paragraph 4847 it is provided that money, goods, chattels, choses in action, evidence of debt, and any interest or equity in, or valid claim to, nonpatented mining claims, shall be personal property, and personal property is declared "to mean and include all property of whatsoever kind or nature, both tangible and intangible, not included in the term real estate," as said term is defined in the section. Paragraph 4849 requires that all taxable property must be assessed at its "full cash value"; that is, "the price at which such property would sell if voluntarily offered for sale by the owner thereof, upon such terms as such property is usually sold, and not the price which might be realized if such property were sold at a forced sale." County assessors must complete their assessment rolls and deliver them to the clerk of the board of supervisors before a certain date each year. The board of supervisors of the county constitutes a county board of equalization, with power to increase individual assessments after notice.

By paragraph 4887, a taxpayer, if dissatisfied with the amount of his assessment as fixed by the board of equalization, may appeal to the superior court of the county, where, by following a prescribed proceeding, review of such assessment may be had. It is required, as a condition precedent to taking such appeal, that the taxpayer shall pay to the county treasurer the full amount of the taxes levied and assessed in accordance with the valuation fixed by the board of equalization. If the court shall find that the assessment is excessive, and that any excess sum has been paid, judgment for refund will be given.

By paragraph 4845 every tax levied is made a lien upon the property assessed, and not to be satisfied or removed until such tax, penalties, charges, and interest are all paid, or the property has absolutely vested in a purchaser under a sale for taxes. The assessment roll must describe real estate by metes and bounds, or common designation or name, and show the full cash value of all real estate and improvements thereon, and the cash value of all personal property.

In case of delinquency the county treasurer is required to make a levy upon all property described in the assessment roll for the taxes which are delinquent, and thereafter he is authorized to levy upon, seize, and distrain personal property and sell the same for taxes. Provision is made for suits to collect delinquent taxes, and for the sale of real property pursuant to judgment, and for the execution of deeds to purchasers after period of redemption has expired.

By paragraph 4939 there can be no test of the validity of a tax upon real or personal property, unless the amount of such tax shall have been paid to the county treasurer, together with penalties thereon, and "no injunction shall ever issue in any suit * * * in any court against this

state, or against any county, municipality, or officer thereof, to prevent or enjoin the collection of any tax levied under the provisions of law; but, after payment, action may be maintained to recover any tax illegally collected, in such manner and at such time as may now or hereafter be provided by law." In case the amount of taxes due shall be finally determined to be less than the amount so paid, the excess shall be refunded in the manner provided in title 49, paragraph 4887, of the act.

Municipal and county taxation are combined (chapter 37, Laws of 1917), to the end that there may be but one assessment of property for the purposes of state, county, city, and incorporated town. Valuations, after equalized and determined by the state board of equalization, become those for the purposes of all taxes. Levies for all city, town, and municipal purposes are made by the governing bodies thereof, and the county assessor extends and carries out such taxes upon the county assessment roll. All taxes for cities, towns. and other municipalities are collected by the county treasurer in the manner in which he collects state and county taxes, and thereafter the amounts due are paid over by him to the treasurers of the cities or municipal corporations, as may be. The provisions of law pertaining to delinquency and collection of taxes are applicable to cities, towns, and municipal corporations. There seems to be a lack of provision for the refund or recovery of taxes after they have been paid to cities, towns, or municipal corporations. This is to be mentioned, because it appears that there are certain town and city taxes involved herein, for instance, taxes in Phœnix, Bisbee, Douglas. Flagstaff, Clifton, Safford, Mohave, Hayden, Ray, and Nogales.

John Mason Ross, Everett E. Ellinwood, and Clifton Mathews, all of Bisbee, Ariz., and E. S. Pillsbury, Oscar Sutro, and Pillsbury, Madison & Sutro, all of San Francisco, Cal., for appellant.

Wiley E. Jones, Atty. Gen., and Clyde M. Gandy and George W. Harben, Asst. Attys. Gen., of Phœnix, Ariz., for appellees.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). [1] The requirement of the several statutory provisions quoted being that the property of the appellant corporation shall be taxable at its full cash value, has the board exceeded its authority, or has it proceeded upon a fundamentally erroneous principle, in making the assessments involved herein? From the facts heretofore stated, it is evident that the rule of assessment expressed and adopted by the board was that appellant oil company should be "allowed" to earn 25 per cent. on the assessed value of its property. The basis for such a rule was found in the consideration of what were called by the board "excessive earnings," or what was regarded as "intangible" property, not included in the term "real estate." The position of the board is that the method followed was "what is known as the capitalized income plan" for ascertaining or valuing the intangible property of the corporation assessed, and it is argued that the board used the term "excessive earnings" in its ordinarily accepted meaning, intending to convey the information that the increase was on that part of the capitalized income over and above the value of the tangible property, and it is said that such method resolves itself into a simple assessment of intangible valuation.

But there is no statutory authority in Arizona for taxation of the earnings of the appellant corporation; nor is there any provision which authorizes the board to judge of what earnings are excessive, or as

to how heavily such earnings may be taxed. As a general thing, intangible property includes franchises, credits, choses in action, and the like. Commonwealth v. Cumberland Co., 124 Ky. 535, 99 S. W. 605. None of these is included in the present matter; and apparently there was no attempt to bring the assessment within any such inclusions. There was no indication given by the board of any valuation placed upon taxable, intangible property, other than as heretofore indicated, and the increase ordered upon "tangible and intangible valuation of the real and personl property," based on excessive earnings, was made upon the real and personal property en bloc. The judgment of the board seems to have been exerted merely with the purpose of fixing a percentage on the assessed value which, in the opinion of the board, the appellant should be allowed to earn. Having determined that point, the board proceeded to capitalize appellant's earnings at the rate fixed. The next step was to increase the assessment of the corporation to the figure thus arrived at without regard to the cash value of the property owned by the corporation. According to the record, the valuations which were originally put upon the real and personal property by the county authorities were not changed as they appeared upon the several assessment rolls, and the language used by the board with respect to the valuation based on excessive earnings and quoted in the statement of the case appears upon each assessment roll, followed by the distributive share of the total raise in each county. It is impossible to ascertain what value is meant to be put upon the real or personal property of the appellant, or upon its stocks of merchandise, or to say what amount of taxes was meant to be levied upon any of the property of the appellant for city, county, or municipal purposes.

The board argues that its action is not to be judged by the descriptive words used in placing the added assessment on the tax rolls as "tangible and intangible valuation"; that this would, at most, be irregularity, as also were the words "based on excessive earnings." We readily grant that the inapt use of words ought not to render an official assessment void. But when, in the scheme of assessment, we find the careful and, continued use of language, and such language has been followed by the distributed portion of the total increase, that argument does not square with the expressions used and the acts done. In the Opinion of the Justices, 220 Mass. 613, 108 N. E. 570, the Supreme Judicial Court of Massachusetts held that property in that state must be taxed upon an ad valorem basis, and that a statute which would undertake to require the valuation of certain classes of property for taxation by capitalizing the income produced thereby at certain rates would be invalid. The court said of such a proposed measure:

"It does not rest the assessment upon any uniform method. It enables the Legislature or a public officer to readjust the multipliers according to a fluctuating judgment of what may be desirable, even to the extent of accomplishing in practice great disproportion. The theory behind the bill would permit manifold classifications of diverse kinds of real as well as personal estate. If extended to its logical conclusions, it would be difficult to trace any remaining constitutional protection to the taxpayer."

[2, 3] Upon the foregoing branch of the case we place our decision that the action of the board was fundamentally erroneous in principle, the assessment was unwarranted in law, and we think appellant should not be denied equitable relief. Assuming that there is a remedy provided by the statutes of the state, an assumption which appellant has forcibly argued is not justified, the enforcement of such remedy would, under paragraph 4887 already referred to, involve a multiplicity of suits involving a question of law common to all of them. A single action at law would not suffice. Union Pacific R. Co. v. Weld County, 247 U. S. 282, 38 Sup. Ct. 510, 62 L. Ed. 1110; Fargo v. Hart, 193 U. S. 490, 24 Sup. Ct. 498, 48 L. Ed. 761; Raymond v. Chicago Traction Co., 207 U. S. 20, 28 Sup. Ct. 7, 52 L. Ed. 78, 12 Ann. Cas. 757; Oelrichs v. Williams, 15 Wall. 211, 21 L. Ed. 43; Johnson v. Wells Fargo, 239 U. S. 234, 36 Sup. Ct. 62, 60 L. Ed. 243. Nor are the federal courts, in the exercise of their equity jurisdiction, bound by paragraph 4939, heretofore quoted, which forbids injunction against the state or any officer thereof to prevent the collection of a tax levied under provisions of law. In re Tyler, 149 U. S. 184, 13 Sup. Ct. 785, 37 L. Ed. 689; Western Union Tel. Co. v. Trapp, 186 Fed. 114, 108 C. C. A. 226.

[4] There is another important phase of the case to which we advert. We do not mean to dispute the proposition that, in arriving at the cash value of property subject to taxation, income product may properly be regarded; but it would appear that in this matter the state board considered, not merely the earnings and income produced by the property of the Standard Oil Company in Arizona, but "in far greater part" has taken into consideration the earnings and income produced by the properties of the appellant situate in California. Counsel for appellee cites Adams Express Co. v. Ohio State Auditor, 165 U. S. 194, 17 Sup. Ct. 305, 41 L. Ed. 683, as authority for what is called the unit rule of valuation. In that case the Supreme Court was considering a special law of the state of Ohio which provided for a valuation of the properties of express companies upon a mileage basis. Property situated outside of Ohio was carefully excluded, but there were provisions which prescribed a method of valuation of properties as units, and directed a distribution of the unit valuation among the various counties of the state. Analogies to this legislation may be found in the statutes of Arizona, which provide for the unit rule of value in the taxation of private car lines, of railroad property, and of telegraph and telephone lines. Paragraphs 4951 to 4962, 4963 to 4970, and 4971 to 4979, Revised Statutes of Arizona 1913. The unit rule applicable to assessment of such property, however, rests upon a mileage basis, which avoids the taxation of any property outside of the state. But we are cited to no statute which authorizes the valuation of the property of the appellant oil company under the unit rule, or for the distribution of the unit value between counties in which such property is situate. In Adams Express Co. v. Ohio State Auditor, supra, it is to be noted that the Supreme Court said that—

"While the unity which exists may not be a physical unity, it is something more than a mere unity of ownership. It is a unity of use, not simply

for the convenience or pecuniary profit of the owner, but existing in the very necessities of the case—resulting from the very nature of the business The same party may own a manufacturing establishment in one state and a store in another, and may make profit by operating the two; but the work of each is separate. The value of the factory in itself is not conditioned on that of the store, or vice versa; nor is the value of the goods manufactured and sold affected thereby. The connection between the two is merely accidental and growing out of the unity of ownership. But the property of an express company distributed through different states is as an essential condition of the business united in a single specific use. It constitutes a single plant, made so by the very character and necessities of the business."

The court did not lay down a rule which would uphold a proceeding to assess the value of appellant's Arizona properties without attempting to ascertain what proportion of appellant's capital was employed in Arizona or California or elsewhere, or which authorized the fixing of the value of the Arizona properties of the appellant by capitalizing the income and profits produced by the California properties of the appellant. In Fargo v. Hart, supra, the Supreme Court reviewed an assessment of exress company properties in Indiana. There, in arriving at the total value of the property to be distributed upon a mileage basis, the taxing authorities included certain real and personal property not necessarily used in the actual business of the express company and which was outside the state of Indiana. The court said it was obvious—

"That this notion of organic unity may be made a means of unlawfully taxing the privilege, or property outside the state, under the name of enhanced value or good will, if it is not closely confined to its true meaning. * * * That would be taxing property outside of the state under a pretense. * * * The difference is not a mere difference in valuation; it is a difference in principle, and in our opinion the principle adopted by the board was wrong."

In Louisville, etc., R. R. Co. v. Greene, 244 U. S. 522, 37 Sup. Ct. 683, 61 L. Ed. 1291, Ann. Cas. 1917E, 97, the principle was again established that a state may not, consistently with the due process provision of the Fourteenth Amendment, include, at least as against any foreign corporation, any part of its tangible property lying without the state for purposes of taxation. Looney v. Crane, 245 U. S. 178, 38 Sup. Ct. 85, 62 L. Ed. 230.

Referring again to the averments of the complaint before us, it appears that the income which has been considered by the officials of the state represented in greater part earnings and income produced by appellant's California properties. For example, it is to be taken as true that the income included appellant's entire profits upon all crude petroleum produced by it and sold in Arizona; also the whole profit upon the appellant's manufacture and sale of manufactured products distributed in Arizona. It may become of vital importance at some time to inquire whether a tax levied upon a capitalization of a profit is not a tax upon the profit, and whether a tax in Arizona upon profits produced by California properties would not be a tax on the California properties. Looney v. Crane, supra; Fargo v. Hart, supra; Union Tank Line v. Wright, 249 U. S. 275, 39 Sup. Ct. 276, 63 L. Ed. ——, decided since the submission of this proceeding.

For the reasons discussed in the first branch of the case, the decree of the District Court, denying the temporary writ of injunction and dismissing the bill, must be reversed, with costs in favor of appellant. The cause is remanded, with instructions to issue a temporary injunction.