**FRANKLIN, County Treasurer, et al. v. NEVADA-CALIFORNIA POWER CO.**

(Circuit Court of Appeals, Ninth Circuit. April 5, 1920. Rehearing Denied May 17, 2920.)

No. 3117.

1. **Taxation** ⬳608(2)—**Jurisdiction of federal court to enjoin enforcement of illegal tax.**

A federal court of equity *held* to have jurisdiction to enjoin enforcement of taxes based on an alleged unlawful and unconstitutional assessment of intangible property of a public service corporation.

2. **Courts** ⬳262(2)—**Remedy at law, to exclude federal equity jurisdiction, must exist in federal courts.**

Under Judicial Code, § 267 (Comp. St. § 1244), providing that "suits in equity shall not be sustained in any court of the United States in any case where a plain, adequate, and complete remedy may be had at law," the remedy at law to exclude equity jurisdiction must exist in the federal courts.

3. **Taxation** ⬳375(1)—**Assessment of property of public service corporation to be made without reference to assessment made in other state.**

Authorities of a state in valuing for taxation purposes the property of a public service corporation, whose plant is in an adjoining state, cannot take into consideration the assessment made in such other state.

4. **Taxation** ⬳376(1)—**Illegal assessment of intangible property.**

Tax officers of a state *held* without authority to assess the intangible property of a power company, whose plant is situated in an adjoining state, by capitalizing its net earnings apportioned according to the mileage of its transmission lines in the two states.

Appeal from the District Court of the United States for the District of Nevada; Edward S. Farrington, Judge.

Suit by the Nevada-California Power Company against Nathaniel K. Franklin, County Treasurer of Nye County, Nev., and others. Decree for complainant, and defendants appeal. Affirmed.

For opinion below, see 240 Fed. 485. See, also, 235 Fed. 317.

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Geo. B. Thatcher, Atty. Gen., of Reno, Nev., Leonard B. Fowler, Atty. Gen., of Carson City, Nev., and Robert Richards, Deputy Atty. Gen., of Carson City, Nev., for appellants.

John R. Dixon and Newman Jones, both of Riverside, Cal., for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge. This suit involves certain taxes for the year 1914, fixed and levied by the Nevada Tax Commission at its October (equalization) session of that year, having at its previous session, June 24, of the same year, established the full cash value of the property in question within that state at $1,492,815, 60 per cent. of which, under the assessment rule adopted in the state, was taken for purposes of taxation, making the assessed value of the property $895,689, of which $328,689 was apportioned to Nye county and $567,-000 to Esmeralda county; the chairman of the tax commission testifying that—

"In finding the said $1,492,815 as the full cash valuation of complainant's property, and $895,689 for assessment purposes, the commission took into account its nonphysical values as well as the purely physical elements. The sum taken therefor was believed to cover overhead costs incurred in the construction of the property and also the franchise elements contemplated by section 5 of the Tax Commission Law in making up the collective unit valuation of the power company's property."

At the October session of the commission the power company appeared and complained that the valuation of its property was excessive, and amounted to an unlawful and unconstitutional discrimination against it, which complaint resulted in an increase by the commission of the full cash value of the property to $3,700,713, 60 per cent. of which, to wit, $2,221,417 it fixed as the value of the property for purposes of taxation—the effect of the change being to increase the Nevada tax of the complainant's property from $21,850.29 to $53,517.82, resulting in the present suit against the officers named of Nye county, and a like suit against similar officers of Esmeralda county, in each of which it was alleged that the full cash value of the complainant's property in Nevada during the year 1914 was and is the sum of $1,-220,843; that the valuation fixed for the year by the state tax commission was and is unjust and inequitable, and in so far as it exceeds 60 per cent. of said $1,220,843 is void, and praying writs of injunction, both temporary and permanent, against the commissioners and other state officers, both suits being tried and disposed of together, and resulting in a decree in the present one that the true full cash value of all of the complainant's properties within the state of Nevada during the fiscal year beginning January 1, 1914, was and is the sum of $1,492,815 and no more; that the valuation of $2,221,417, placed and assessed upon the said properties for purposes of taxation for that fiscal year by the Nevada tax commission at its October session of 1914, was and is, in so far as the same exceeds 60 per centum of the said sum of $1,492,815, unjust and inequitable; that each and all of the orders and valuations of the said Nevada tax com-

mission, mentioned and referred to in the complainant's complaint, in so far as they purpose to fix or establish or assess any valuation of the complainant's property within the said state of Nevada for the fiscal year 1914 for assessment and taxation purposes in excess of 60 per centum of $1,492,815, were and are wholly void; and perpetually enjoining the defendant officers of Nye county from taking any proceedings to collect any taxes or assessments upon any valuation of the said property in excess of $328,689. The appeal is from that decree, and we may add that the facts are practically undisputed.

[1] The point made and much urged on behalf of the appellants, that the case was not and is not within the jurisdiction of the federal courts, is, we think, completely answered and disposed of by the recent decision of the Supreme Court in Greene v. Louisville & I. R. R. Co., 244 U. S. 499, 37 Sup. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88. It is therefore needless to refer to the many preceding cases upon the point, cited and relied on by the appellants.

[2] It is also contended in behalf of the latter that the appellee was precluded from resort to the federal court of equity, for the reason that the statutes of the state of Nevada afforded it speedy and adequate remedies at law; section 267 of the Judicial Code (36 Stat. 1163 [Comp. St. § 1244]) declaring:

"Suits in equity shall not be sustained in any court of the United States in any case where a plain, adequate, and complete remedy may be had at law."

Section 7 of the Nevada Tax Commission Act in force in 1914 (St. 1913, c. 134), and sections 3657–3664, inclusive, of the Revised Laws of that state, also in force in 1914, are the provisions that it is contended afforded such remedies. It might be readily pointed out (as was done by the court below in its opinion) why that contention is not well-founded; but we think it unnecessary to do so, for the reason that the law is that the adequate remedy at law which is the test of equitable jurisdiction in the federal courts must exist in those courts. The fact of the existence of such a remedy in a state court is immaterial. McConihay v. Wright, 121 U. S. 201, 206, 7 Sup. Ct. 940, 30 L. Ed. 932; Smythe v. Ames, 169 U. S. 466, 516, 517, 18 Sup. Ct. 418, 42 L. Ed. 819; National Surety Co. v. State Bank, 120 Fed. 593, 602, 603, 56 C. C. A. 657, 61 L. R. A. 394; Brun v. Mann, 151 Fed. 145, 153, 154, 80 C. C. A. 513, 12 L. R. A. (N. S.) 154; Borden's Condensed Milk Co. v. Baker, 177 Fed. 906, 101 C. C. A. 186; Peck v. Ayers & Lord Tie Co., 116 Fed. 273, 53 C. C. A. 551; Coler v. Board of Com'rs (C. C.) 89 Fed. 257; Missouri, K. & T. Ry. Co. v. Elliott (C. C.) 56 Fed. 772.

[3, 4] Upon the merits we think the case equally plain. The evidence showed, and the court below found, that more than two-thirds of the tangible property of the appellee is situated in the state of California, consisting of its generating plants, waters, and water rights, and less than one-third, consisting mainly of its transmission lines for the conveyance of the generated power to mining districts principally, is within the state of Nevada. The court fixed the physical value of the company's property situated in California, exclu-

sive of the value of its water and water rights at $2,300,000, whereas no witness valued the company's tangible properties situated in Nevada, including overhead charges, at more than $1,200,000 yet the tax commission of that state, at its meeting in October, 1914, fixed the full cash value of all of the property of the company at $3,700,713, by ascribing to Nevada 85 per cent. of the net earnings of the company for the year ending June 30, 1914, and capitalizing the result on a 10 per cent. basis; the chairman of the commission testifying:

"I have given gross earnings for the fiscal year ending June 30, 1914, $992,928.   Thereafter the following deductions were taken: Operating expenses, $339,115; taxes, $18,435, annuity or return on the property, 4 per cent. on $5,000,000; total plant valuation claimed, or $200,000, making total deductions $557,550.   Taking that amount from gross earnings leaves net income of $435,378.  Taking 85 per cent. of that as creditable to Nevada, gives $370,071.30, and that capitalized at 10 per cent. will give $3,700,713.  Sixty per cent. of that, which was taken for assessment purposes, gives $2,220,427."

That witness was further questioned, and answered as follows:

"Q. Now will you please state to the court just why you ascribe 85 per cent.; in other words, was it because 85 per cent. of the lines of the company were in the state of Nevada, and 15 per cent., as you estimated them to be, in California?   A. Yes, that was the basis.   * * *   We also had in mind, I don't know that I should say it had controlling importance,   * * *   that in California the assessment, taken by the authorities on a basis of a 4.6 per cent. factor, applied to the portion of the gross earnings measured to California on the ratio of the (transmission line) mileage within California to the total mileage,   * * *   gave them a valuation on the physical property of approximately $600,000 or $650,000; and that, in contradistinction to the fact there was something like three million some odd thousand dollars worth of the physical properties of your company actually situate in California.   It necessarily followed that the state of California left the balance of the earnings I have used to the state of Nevada for assessment.   * * *   Q. Yes; but is it or is it not a fact, Mr. Shaugnessy, that in ascribing 85 per cent. you used as the basis for so doing the mileage of the company in this state as contrasted with that in California?   A. That was one of the elements.   Q. And the other was what you have just explained, of California leaving something to Nevada? A. That is just it exactly."

The witness further testified:

That the $3,700,713 "was reached by taking into account the physical value of the property, plus the overhead charges, and plus the capitalization of the franchise value, as determined by the net earnings of your company," and, further, that "the franchise, as we understand it,   * * *   would be the use value of the property, measured by its earnings; and whatever that might capitalize out for in excess of the physical value; that is, in excess of the physical value and overhead costs, would represent the franchise value; but, as stated before, we did not pursue that method at the January meeting of capitalizing out your net earnings, and undertaking to assign them, as we did at the equalization period in October."

As a matter of course, the valuation fixed by the authorities of California upon that portion of the appellee's property situated in that state for taxation purposes in California was something with which no officer of the state of Nevada had any concern, and whether too low or too high had no bearing whatever upon the proper value to be fixed for taxation purposes by the Nevada authorities upon that portion of the appellee's property situated in the state of Nevada; and

that in so far as the Nevada tax commission, in fixing the value of that portion of the property of the appellee situated in that state, considered the intangible value growing out of the company's property situated in the state of California, was wholly unauthorized, was decided by this court in the recent case of Standard Oil Co. v. Howe, 257 Fed. 481, 168 C. C. A. 485.

The decree is affirmed.