# McCONIHAY *v.* WRIGHT.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE
DISTRICT OF WEST VIRGINIA.

Argued March 21, 22, 1887. — Decided April 11, 1887.

The test of equity jurisdiction in the courts of the United States — namely, the adequate remedy at law — is the remedy which existed when the Judiciary Act of 1789 was adopted, unless subsequently changed by Congress; and is not the existing remedy in a State or Territory by virtue of local legislation.

A mining and manufacturing corporation in Virginia acquired title by deed to 10,000 acres of land in that part of the state which afterwards became West Virginia, and then, under a law of Virginia, acquired title, by condemnation, to a strip of land for a right of way to it from the Kanawha River over adjoining lands. The company becoming embarrassed, judgment creditors commenced proceedings in equity to secure the marshalling of the assets of the corporation and their application to the payment of its debts. These proceedings resulted in a sale to C, which sale was confirmed and a deed executed. Subsequently C filed a bill to enforce certain trusts accompanying the purchase, and then an amended bill, making the corporation a party. In the latter it was averred that the tract for the roadway had been sold under the decree, and had been left out from the deed by the commissioner by mistake, and the bill prayed that the tract should be decreed to be conveyed to C. The company answered by the same counsel representing C, admitting these facts to be true. The court decreed a sale of all the property, including both tracts, which was made accordingly, and the sale confirmed, and a deed to the purchaser made. *Held*, that the title of the corporation in the tract acquired by condemnation passed to the purchaser under the second sale as fully as if conveyed by the company by a deed under its corporate seal, and that, under the circumstances, the employment of the same counsel by the company and by C, was not evidence of fraud.

The provisions of § 20 of the Act of the State of Virginia of March 11, 1837, relating to railroads, are not applicable to the railroad constructed by the Winifrede Mining and Manufacturing Company; or, if applicable, the charter of the company was in that respect altered by the Virginia Code of 1849; and this conclusion is not affected by the fact that the charter was granted by the legislature after the enactment of the code, but before it went into operation.

If the insolvency of the Winifrede Company, and the sale of its property as an entirety, including land acquired by condemnation for use as an outlet from its mines to a navigable river, constituted an abandonment of the property thus acquired, and a cesser of use, it did not thereby revert to the original owner; but the forfeiture could be enforced, if at all, only by the State.

THE complainant in this case, Theodore Wright, the appellee, a citizen of the State of Pennsylvania, filed his bill in equity September 24, 1881, against the appellants, citizens of the State of West Virginia, the object and prayer of which were to quiet his title to certain real estate described therein. The title of the complainant to the premises in controversy was derived from the Winifrede Mining and Manufacturing Company, a corporation of the State of West Virginia. That company was chartered by a special act of the legislature of Virginia, February 16, 1850, and made a body politic " for the purpose of exploring, digging, mining, raising, and transporting coal and other minerals and substances, and for manufacturing mineral, vegetable, and other articles in and from the counties of Kanawha and Boone, and such other counties as may hereafter be created out of parts of said counties."

The third section of its charter was as follows : " That it shall and may be lawful for the said company to erect and construct a slack-water navigation from some convenient point on Kanawha or Coal rivers, contiguous to their said lands, and along the bed of the said Coal River to the Great Kanawha: *Provided, however,* That nothing in this act contained shall be so construed as to prevent the said rivers from being and remaining public highways, free for the navigation of all the citizens of this commonwealth ; and also to construct such railroad or railroads from any point on their said lands to the Great Kanawha River, or any other navigable stream in the valley of the Kanawha River and its branches, or to connect with any other railroad or improvement which is now or may hereafter be authorized by the State of Virginia in the said valley of the Kanawha and its branches ; and to enable the said company to carry out the provisions in this section contained, they are hereby invested with all the rights, powers, and privileges, and subjected to all the limitations and restrictions, contained in an act entitled, ' An act prescribing certain general regulations for the incorporation of railroad companies,' passed March 11, 1837, so far as the same are applicable to and not inconsistent with the provisions of this act."

By the second section of the charter the company was

authorized to purchase and hold lands, not exceeding 10,000 acres at any one time, in the said counties of Kanawha and Boone, or in any new counties that had been or might thereafter be formed and created out of parts of said counties.

In pursuance of the authority given by its charter the Winifrede Mining and Manufacturing Company of Virginia, on the 8th of January, 1853, acquired by deed a title in fee simple to a tract of land containing about 10,000 acres. John McConihay owned land between this tract and the Kanawha River. For the purpose of acquiring a right of way for a railroad, and a depot on the banks of the Kanawha River, in order to transport its coal, the Winifrede Company, by judicial proceedings, appropriated a tract through the lands of McConihay, being a narrow strip four or five miles long, connecting its tract of coal land with the bank of the river. That strip, appropriated in that way and for that purpose, was the subject of the controversy in this suit. A demurrer interposed by the defendants was overruled, and the case was heard finally upon bill, answer, replication, and proofs. A decree was rendered in favor of the complainant, from which the defendants prosecuted the present appeal.

*Mr. J. F. Brown* for appellants.

I. The demurrer should have been sustained. (1) The plaintiff had ample and complete remedy at law. (2) No leave of court was had, though the bill shows that the property is yet in the control of the court. (3) There is a want of proper parties. Cram is not before the court.

II. The bill should have been dismissed at the hearing; because the defendants proved their title. The act of 1837 provided a reversion to the former owner, upon an abandonment of the public use — the Code of 1849 provided that an estate in fee simple should pass by condemnation proceedings. The special act of 1850, by which alone this company acquired the right to condemn land, ignored the Code of 1849 and granted the company only the rights and powers specified in the prior act of 1837, subject to all the limitations and re-

strictions of that act. This amounted to a reënactment of the act of 1837 for the purposes of this company, and was as to it a repeal of all inconsistent acts, including the act of 1849. The fact that the Code of 1849 had not yet gone into effect is immaterial. It was liable to repeal from the date of its passage, and as to the Winifrede Mining and Manufacturing Company, the act of February 16, 1850, did repeal it. The right in the corporation to exercise the right of eminent domain was part of its franchise, and conditioned upon the discharge of the correlative duties to the public. The use of the lands thus taken is no less a part of the franchise held upon a like condition. The legislature could not confer upon private individuals the power to condemn lands; no more should corporations, that have acquired land by the exercise of this right under an alleged intention to construct and operate a railroad for the public use, be permitted to abandon its purpose, and transfer the lands so taken to private individuals for private ends, — by indirection do that which the legislature itself could not authorize.

By the act of 1837, the advantages anticipated from the operation of the road were required to be set off against the just compensation guaranteed by the Constitution; and in the case at bar the set-off was applied. Any different act than that of 1837, providing for a reversion upon failure of the consideration would violate the constitution of the state. *East Alabama Railway* v. *Doe*, 114 U. S. 340; *Louisville & Nashville Railroad* v. *Covington*, 2 Bush, 526; *Strong* v. *Brooklyn*, 68 N. Y. 1.

That corporations are confined strictly to the powers and rights granted by their charters, and can have nothing not expressly given, is established by the following cases, and meets the claim of the plaintiff to a fee simple absolute in the land in controversy: *Dartmouth College* v. *Woodward*, 4 Wheat. 518; *Bank of Augusta* v. *Earle*, 13 Pet. 519, 587; *Beach* v. *Fulton Bank*, 3 Wend. 573; *People* v. *Utica Ins. Co.*, 15 Johns. 358;[1] *Le Couteulx* v. *City of Buffalo*, 33 N. Y. 333; *Camden & Amboy Railroad* v. *Remer*, 4 Barb. 127; *Mobile & Ohio Railroad* v. *Franks*, 41 Miss. 494; *Trustees* v.

---

[1] S. C. 8 Am. Dec. 243.

*Peaslee,* 15 N. H. 317; *Shaumut Bank* v. *Plattsburgh, &c., Railroad,* 31 Vt. 491; *Pennsylvania, &c., Nav. Co.* v. *Dandridge,* 8 G. & J. 248;[1] *Vandall* v. *South San Francisco Dock Co.,* 40 Cal. 83; *Winter* v. *Muscogee Railroad,* 11 Geo. 438; *Whitman Mining Co.* v. *Baker,* 3 Nevada, 386; *Ruggles* v. *Collier,* 43 Missouri, 353; *Rochester Ins. Co.* v. *Martin,* 13 Minn. 59; *Occum Co.* v. *Sprague Mf'g Co.,* 34 Conn. 529; *Maddox* v. *Graham,* 2 Met. (Ky.) 56; *East Anglian Railways* v. *Eastern Counties Railway,* 11 C. B. 775; *People* v. *Albany,* 11 Wend. 539;[2] *Beatty* v. *Knowler,* 4 Pet. 152.

That the power to take private property is strictly construed; so, also, the nature of the interest, whether in fee or an easement: *Downing* v. *Mt. Washington Railroad,* 40 N. H. 230; *Petersburg* v. *Metzker,* 21 Ill. 205; *Fuller* v. *Plainfield Acad. School,* 6 Conn. 532; *Commonwealth* v. *Erie, &c., Railroad,* 27 Penn. St. 339;[3] *White's Bank* v. *Toledo Ins. Co.,* 12 Ohio St. 601; *Pacific Railroad* v. *Seeley,* 45 Missouri, 212.

*Mr. R. C. McMurtrie* and *Mr. E. B. Knight* for appellee.

Mr. Justice Matthews, after making the foregoing statement of the case, delivered the opinion of the court.

The first error assigned is, that the case is not one of equitable jurisdiction, it being contended that the complainant below had a complete and adequate remedy at law. The bill sufficiently alleges that the complainant is in possession of the premises in controversy, and in this respect is supported by the proofs. The prayer of the bill is, that the defendants may be required to assert and declare the rights and title claimed by them in and to the premises, and that in the meantime they may be enjoined " from interfering with or hindering or obstructing your orator, his agents, or employes, in any manner in the use and enjoyment of said way and depot until the further order of said court," and for general relief. The contention of the appellants, however, is, that by the statute of West Virginia the complainant might have maintained an action of ejectment. Reference is made in support of this

---

[1] *S. C.* 29 Am. Dec. 543.     [2] *S. C.* 27 Am. Dec. 95.     [3] *S. C.* 67 Am. Dec. 471.

contention to the West Virginia Code of 1868, c. 90, to show that an action of ejectment in that state will lie against one claiming title to or interest in land, although not in possession. Admitting this to be so, it, nevertheless, cannot have the effect to oust the jurisdiction in equity of the courts of the United States as previously established. That jurisdiction, as has often been decided, is vested as a part of the judicial power of the United States in its courts by the Constitution and acts of Congress in execution thereof. Without the assent of Congress that jurisdiction cannot be impaired or diminished by the statutes of the several states regulating the practice of their own courts. Bills *quia timet*, such as the present, belong to the ancient jurisdiction in equity, and no change in state legislation giving, in like cases, a remedy by action at law, can, of itself, curtail the jurisdiction in equity of the courts of the United States. The adequate remedy at law, which is the test of equitable jurisdiction in these courts, is that which existed when the Judiciary Act of 1789 was adopted, unless subsequently changed by act of Congress.

The next assignment of error is that the proof fails to sustain the title set up by the appellee. That title is based upon two judicial sales. The first of these was a sale to Henry A. Cram, in a proceeding commenced in 1860 by the Bank of Virginia and other judgment creditors against the Winifrede Mining and Manufacturing Company, the object of which was to marshal the assets of that corporation and apply them to the payment of its debts. A decree was rendered therein on January 26, 1861, ascertaining the debts of the company and their priority as liens, and ordering a sale of its property for their satisfaction. That decree directed the sale of "that ten thousand-acre tract of land belonging to the Winifrede Mining and Manufacturing Company, fully set out and described in the bill and exhibits and other proceedings in this cause, and lying on Kanawha and Coal rivers and on Field's Creek, in the counties of Kanawha and Boone, together with all improvements thereon used in the mining, transporting, and shipping of coal, including railroad iron, picks, shovels, cars, engines, and whatever other tools and implements there

may be upon the property belonging to said company." The sale to Cram was duly confirmed by the court, and a deed conveying the property made to him by the commissioner. Subsequently, in 1878, Henry A. Cram, the purchaser, filed his bill in equity against Edward A. Bibby and others, in which he alleged that the purchase made by him at the sale under the decree in favor of the Bank of Virginia was made in trust on behalf of himself and others. The object and prayer of his bill were, that the trusts arising out of the agreements set forth therein, in pursuance of which the purchase was made, might be administered and carried out under the direction of the court, and an account taken of the expenditures of the complainant, the property sold, and the proceeds divided among the parties in interest. By an amendment, the Winifrede Mining and Manufacturing Company was made a party to the bill; and in a second amendment it was alleged that at the sale made under the decree in the Bank of Virginia case, the railroad track and road-bed leading from the Kanawha River to the ten thousand-acre tract, some five miles long, more or less, was sold and should have been conveyed by the commissioner in his deed to the complainant, but by mistake was left out and not embraced in the conveyance. The complainant, therefore, prayed that the Winifrede Mining and Manufacturing Company, and all parties named as defendants in the original bill, be made defendants to the amended bill, and that the court would treat the roadway as a part of the property embraced in the deed to the complainant; adding that it was a coal property, that the road and road-bed and rails cost some $300,000, and that the property was valueless without this roadway, and the court was asked to sell the property, including the roadway as an entirety. To this amended bill an answer was filed in the name and on behalf of the Winifrede Mining and Manufacturing Company, admitting the allegations of the bill and amendments to be true, and particularly that the property, including the road-bed and the ten thousand-acre tract and rails, was sold as an entirety, and as such purchased by Cram, and should have been included in the deed from the commissioner to him as purchaser.

In this suit a final decree was passed ordering a sale of the property as prayed for and described. It was declared in that decree that "the legal title to the tract of 10,180 acres of land, more or less, situated on Field's Creek and Big Coal River, West Virginia, and in the bill and amended bills more particularly described, together with the road-bed and right of way from the same to the Kanawha River, including the front property," was vested in the complainant, Henry A. Cram, and the property as thus described was ordered to be sold. At this sale Theodore Wright, the appellee, became the purchaser for the sum of $120,000. This sale was confirmed by the court and a deed ordered to be made, upon payment of the purchase money.

The objection of the appellants, that these proceedings do not vest in Theodore Wright, the appellee, the title which was in the Winifrede Mining and Manufacturing Company to the premises in dispute, cannot be sustained. It could avail the appellants as a defence only by showing that the legal title was still outstanding in the Winifrede Mining and Manufacturing Company, and that as between that company and Wright the latter was wrongfully in possession; but that question has already been adjudged as between the Winifrede Mining and Manufacturing Company and Cram, to whose title Wright succeeds by the decree of the Kanawha Circuit Court, as against which that company can no longer assert any title, either at law or in equity, to the property in controversy. Wright is now vested by virtue of that decree with whatever title the Winifrede Mining and Manufacturing Company had to the premises as completely as if that title had been conveyed to him by the company by a deed under its corporate seal. It is said, however, by the appellants, that the decree rendered in the suit in which Cram was a complainant was collusive and fraudulent, because it appears upon the face of the record that the Winifrede Mining and Manufacturing Company appeared without process and answered, but not under its corporate seal, by the same counsel who represented Cram. This, however, is not proof of fraud, but only of a consent to do what it appears to have been perfectly proper to do; that is, to make good an imperfect conveyance.

Were it otherwise the imputed fraud is not one of which the appellants are the proper party to complain, being strangers to the transaction.

The third assignment of error is, that before the decree in the Cram suit, the title originally acquired by the Winifrede Mining and Manufacturing Company had failed and ceased, and by force of the statute under which it was acquired had reverted to the appellants as heirs at law and assigns of John McConihay. It will be remembered that the charter of the Winifrede Mining and Manufacturing Company, having authorized it to construct a railroad from its lands to the Great Kanawha River, for that purpose invested the company with all the rights, powers, and privileges, and subjected it to all the limitations and restrictions contained in the act entitled "An act prescribing certain general regulations for the incorporation of railroad companies," passed March 11, 1837, "so far as the same are applicable to and not inconsistent with the provisions of this act."

The act of March 11, 1837, thus referred to, contained provisions in reference to the organization of railroad companies generally, defining the powers of directors, conferring power to condemn land for right of way and depot purposes, and providing for the assessment of damages therefor. In prescribing the mode in which the freeholders appointed to ascertain the damages payable to the proprietor of the lands, by reason of the condemnation thereof for the use of the company, should act, it declares that "they shall consider the proprietor of the land as being the owner of the whole fee-simple interest therein; they shall take into consideration the quantity and quality of the land to be condemned, the additional fencing which will be required thereby, and all other inconveniences which will result to the proprietor from the condemnation thereof; and shall combine therewith a just regard to the advantages which the owner of the land will derive from the construction of the railroad for the use of which his land is condemned: *Provided*, That not less than the actual value of the land, without reference to the location

and construction of the road, shall be given by the commissioners."

It also provided for rendering judgment in favor of the proprietor for the amount of the damages awarded to him, and said: "And when such judgment shall be satisfied by the payment of the money into court or otherwise, the title of the land for which such damages were assessed shall be vested in the company in the same manner as if the proprietor had sold and conveyed it to them."

The 20th section of the act is as follows: "The works of the company shall be executed with diligence, and if they be not commenced within two years after the passage of the act of incorporation, and finished within the period which may be therein prescribed; and in case the company at any time after the said road is completed shall abandon the same, or cease to use and keep it in proper repair, so that it shall fail to afford the intended accommodation to the public, for three successive years, then and in that case also their charter shall be annulled as to the company, and the State of Virginia may take possession of the said railroad and works, and the title thereto shall be vested in the said state so long as it shall maintain the same in the state and manner required by said charter; otherwise the lands over which the said road shall pass shall revert to and be vested in the person or persons from whom they were taken by concession or inquisition as aforesaid, or their heirs or assigns."

The 35th section of the same act provides, that "any part of any charter or act of incorporation granted agreeably to the provisions of this act shall be subject to be altered, amended, or modified by any future legislature as to them shall seem proper; except so much thereof as prescribes the rate of compensation or tolls for transportation: *Provided*, That the rights of property acquired under this act, or any other act adopting the provisions of this act, shall not be taken away or impaired by any future act of the legislature."

The contention on the part of the appellants is, that by virtue of the 20th section of the act of March 11, 1837, above quoted, the premises in dispute reverted to them as the heirs

and assigns of John McConihay, having been appropriated to the use of the Winifrede Mining and Manufacturing Company under the provisions of that act, and having been abandoned by the company for more than three successive years for the uses for which the appropriation had taken place, and the State of Virginia not having interposed on its own behalf.

It further appears, however, that in August, 1849, a general code of laws, known as the Code of 1849, was passed by the legislature of Virginia, to take effect on July 1, 1850. Section 1, c. 61, of that code, is as follows : "Every company which is governed by the act passed on the 7th day of February, 1817, prescribing certain general regulations for the incorporation of turnpike companies, or by the act passed on the 11th day of March, 1837, prescribing certain general regulations for the incorporation of railroad companies, and every company which after the commencement of this act shall be incorporated to construct any work of internal improvement, shall be governed by the provisions contained in the 57th chapter and in this chapter, so far as they can apply to such company without violating its charter."

By § 11, tit. 17, of that act, it is provided, in reference to the damages awarded for compensation to the proprietor for lands taken for the use of corporations, that "upon such payment the title to that part of the land for which such compensation is allowed shall be absolutely vested in the company, county, or town in fee simple." And § 28 is as follows : "When any corporation shall expire or be dissolved, or its corporate rights and privileges shall have ceased, all its works and property, and debts due to it, shall be subject to the payment of debts due by it, and then to distribution among the members according to their respective interests; and such corporation may sue and be sued as before, for the purpose of collecting debts due to it, prosecuting rights under previous contracts with it, and enforcing its liabilities and distributing the proceeds of its works, property, and debts among those entitled thereto."

The proceedings between the Winifrede Mining and Manufacturing Company and John McConihay for the appropriation

of the lands in controversy for right of way and depot purposes for its railroad took place in 1853, and whatever title he acquired by virtue of those proceedings vested after the Code of 1849 took effect. It is contended on the part of the appellee, that the nature and character of that title are determined by that act, and not by the act of March 11, 1837; although it is also insisted that if the act of 1837 remained in force for that purpose, nevertheless there has been no failure of title by reason of its conditions.

In our opinion the case is not governed by the 20th section of the act of March 11, 1837. The act to incorporate the Winifrede Mining and Manufacturing Company does not adopt all the provisions of that act in every particular as a part of its charter, but only "so far as the same are applicable to and not inconsistent with the provisions of this act." A manifest difference exists between such a road as that constructed under the charter of the Winifrede Mining and Manufacturing Company for the purpose of transporting coal from the mines to a navigable river or other railroad, and such railroads as were within the purview of the act of March 11, 1837, which were railroads for the general transportation of persons and property between distant points. It is in reference to the latter alone that we think the provisions of § 20 apply; the railroads referred to in that section plainly being such that, in case of abandonment by the company owning the same, the State of Virginia might take possession thereof and maintain them in the state and manner required by the charter of the company. The provisions of that section, in our opinion, are not applicable to the case of such a road as that of the Winifrede Mining and Manufacturing Company.

Were it otherwise, however, we are satisfied that the charter of the Winifrede Mining and Manufacturing Company, in this particular, was altered by the operation of the Code of 1849. Chapter 61 of that act applies to companies incorporated to construct and carry on works of internal improvement, including railroads. The first section declares that "every company which is governed by the act passed on the 7th day of February, 1817, prescribing certain general regulations for the

incorporation of turnpike companies, or by the act passed on the 11th day of March, 1837, prescribing certain general regulations for the incorporation of railroad companies, and every company which, after the commencement of this act, shall be incorporated to construct any work of internal improvement, shall be governed by the provisions contained in the 57th chapter and in this chapter, so far as they can apply to such company without violating its charter." By the express terms of this section every company previously incorporated, but in existence when that act went into operation, and which, by the terms of its charter, was governed by the act of March 11, 1837, thenceforward was to be governed by the provisions contained in the Code. This includes the Winifrede Mining and Manufacturing Company, which, on July 1, 1850, when the Code took effect, was such a corporation. The Code of 1849 contained no such provision as that embraced within the terms of § 20 of the act of March 11, 1837. On the contrary, it provides, in § 31, that, "if the works of any company be not commenced and completed within the time prescribed by its act of incorporation, or if after such works be completed the company shall abandon the same, or for three consecutive years cease to use and keep them in good repair, in each of these cases the State may either proceed by *quo warranto* or take possession of the works and property of such company; and, in case of so taking possession, shall keep the same in good repair, and have all the rights and privileges previously vested in the company. But the State shall pay the company for such works and property the full value of the same at the time it takes possession thereof."

The 28th section of title 17 is as follows: "When any corporation shall expire or be dissolved, or its corporate rights and privileges shall have ceased, all its works and property and debts due to it shall be subject to the payment of debts due by it, and then to distribution among the members according to their respective interests; and such corporation may sue and be sued as before for the purpose of collecting debts due to it, prosecuting rights under previous contracts with it, and enforcing its liabilities, and distributing the proceeds of its works, property, and debts among those entitled thereto."

The appellants rely upon the circumstance that the charter of the Winifrede Mining and Manufacturing Company was passed after the enactment of the Code of 1849, but before it went into operation, as taking it out of the provisions of the Code when it did go into effect; but this circumstance seems to us entirely immaterial. When the Code went into effect on July 1, 1850, the Winifrede Mining and Manufacturing Company was an existing corporation, governed in certain particulars by the act of March 11, 1837. The Code when it went into effect operated upon this company, and from that time became a part of its charter. The title which it afterwards acquired in 1853 was, therefore, not affected by the provisions of the act of March 11, 1837, but was held by it in accordance with the provisions of the Code of 1849.

It is argued, however, by the appellants, that by the general principles of the common law, the title of the Winifrede Mining and Manufacturing Company was forfeited by the abandonment of the property, and a cesser of the uses for which only it could have been acquired, so that it reverted to John McConihay and his heirs and assigns. There was, however, no intentional abandonment of the property by the company for the uses for which it was acquired. The company became insolvent, unable to pay its debts, and to carry on its business. Its property was taken in execution by judgment creditors; a bill in equity was filed by them for the purpose of subjecting its assets to the payment of their claims. To that suit John McConihay was a party as a judgment creditor, holding a judgment for the amount of the compensation awarded to him for the premises in controversy. That judgment, among others, was paid out of the proceeds of the sale of the very property which his heirs and assigns now seek to recover. Having thus obtained the benefit of the sale on which the title of the appellee is founded by receiving a portion of its proceeds, it is not open to them to question the effect of that sale as a conveyance of the subsisting title of the Winifrede Mining and Manufacturing Company to the land in controversy. It is sufficient, however, to say that the Code of 1849, which governs the case, expressly devotes the property

of the company, including this right of way, to the payment of its debts, and that no forfeiture of the title, on the ground of an abandonment, can be enforced, except by the state, and on payment to the company of the value of the property, of which, in consequence of such abandonment, it takes possession.

We find no error in the decree of the District Court, and it is accordingly

*Affirmed.*