### RISTY et al. v. CHICAGO, R. I. & P. RY. CO., and five other cases.

(Circuit Court of Appeals, Eighth Circuit. March 18, 1924.)

Nos. 6312–6317.

1. **Constitutional law ⬤➡46(1)—Federal courts will not pass on constitutionality of statutes unless absolutely necessary.**

Federal courts will not pass on the constitutionality of statutes unless absolutely necessary.

2. **Drains ⬤➡71—County commissioners held without authority to take in lands not benefited in assessing cost of repairs and maintenance.**

Where a river broke through a natural barrier and flowed into drainage ditches and because of the inadequate construction of the ditches washed out a spillway, leaving the water uncontrolled, and threatening serious damage where the water emptied over a steep bluff into the river, the county commissioners could clean and maintain the ditches under Rev. Code S. D. 1919, § 8470, or abandon the ditches and construct new ones in the same location by complying with section 8489; but they had no power, by pretending to abandon the ditches, to assess part of the cost of maintaining and repairing the old one on lands outside of the original drainage district in no way benefited thereby.

3. **Drains ⬤➡2(3)—Drainage of other than agricultural lands must be by drainage districts established under legislative authority.**

Under Const. S. D. art. 21, § 6, drainage of lands for any public use other than the drainage of agricultural lands must be carried out by drainage districts established under legislative authority.

4. **Courts ⬤➡262(2)—Federal equity court cannot give relief where there is "plain, adequate and complete remedy at law."**

Under Judicial Code, § 267 (Comp. St. § 1244), federal equity courts cannot give relief where there is a "plain, adequate and complete remedy" at law, but the remedy at law must be as certain and efficient as that in equity.

5. **Courts ⬤➡262(2)—Remedy in federal court necessary to defeat suit in equity; "remedy at law."**

The "remedy at law" which will prevent the bringing of a suit in a federal court of equity must be a remedy on the law side of the federal court, and not a remedy in the state courts.

6. **Courts ⬤➡262(2)—Landowner's remedy at law for illegal drainage assessments held inadequate.**

Where the only remedy against unauthorized drainage assessments was to appear before the county commissioners and to appeal from their finding to the state court, *held*, that the remedy at law was inadequate under Judicial Code, § 267 (Comp. St. § 1244).

7. **Taxation ⬤➡498, 608(2)—Right to restrain assessment or collection of state tax for illegality must be clear.**

A suit in equity will not lie to restrain the assessment or collection of a tax on the sole ground that it is illegal, but there must be special circumstances bringing the case under some recognized head of equity

⬤➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

jurisdiction, and the right to such relief must be clear where court is asked to restrain collection of a state tax.

**8. Taxation ⊚⟶498—An assessment putting cloud on title gives rise to equitable jurisdiction.**

An assessment putting a cloud on title gives rise to equitable jurisdiction unless there is an adequate remedy at law.

**9. Drains ⊚⟶91—Assessment of benefits for drainage held to create cloud on title giving equity jurisdiction.**

An assessment of benefits against land affected by a drainage improvement, or fixing the proportion of benefits thereof, under Rev. Code S. D. 1919, §§ 8463, 8464, *held* to create a cloud on the title giving equity jurisdiction.

**10. Action ⊚⟶62—Suits to enjoin drainage assessments held not premature.**

Suits in federal court to enjoin drainage district assessment proceedings on the ground that they were unauthorized *held* not premature.

**11. Courts ⊚⟶328(11)—Threatened drainage assessments held to exceed $3,000 giving federal court jurisdiction.**

Where the proportion of benefits for drainage improvements had been assessed on a unit basis and it was merely a matter of computation to determine the amount assessed against each tract of land, the apportioning being subject to change only if landowner should convince the county commissioners that their conclusion was erroneous, the federal court had jurisdiction of suits attacking such threatened assessments as exceeded $3,000.

**12. Courts ⊚⟶263, 278—Federal court did not lose jurisdiction by failing to decide constitutional question.**

The jurisdiction of the federal court in a suit presenting a constitutional question extended to all questions involved in the case, and it did not lose jurisdiction by omitting to decide the constitutional ones.

**13. Drains ⊚⟶74—Acts of landowners outside of original drainage district held not to estop them from attacking validity of drainage assessments.**

The fact that railroads and other landowners had been in close touch with drainage ditch proceedings and had in several instances encouraged the work and had been assessed for benefits to other lands in the original drainage district without protest *held* not to estop them from attacking the validity of the assessment as to property outside the original district, where they had no notice at the time of such acts that benefits would be assessed on such property.

Appeal from the District Court of the United States for the District of South Dakota; James D. Elliott, Judge.

Suits, by the Chicago, Rock Island & Pacific Railway Company, by the Chicago, Milwaukee & St. Paul Railway Company, by the Chicago, St. Paul, Minneapolis & Omaha Railway Company, by the Northern States Power Company, by the City of Sioux Falls, and by the Great Northern Railway Company, respectively, against A. G. Risty and others, as County Commissioners, and others. From decrees for plaintiffs (282 Fed. 364) the defendants in each case appeal. Affirmed.

In the year 1907 the board of county commissioners of Minnehaha county, S. D., acting under the drainage statutes of that state, established and had constructed a drainage ditch known as drainage ditch No. 1, bottom width of 40 feet, at an expense of $46,600. This ditch was north of Sioux Falls and ran first in a southerly direction from its initial point; thence easterly past the pumping station of the city of Sioux Falls; thence southeasterly about 1,000 feet to the Big Sioux river near the north limits of Sioux Falls. It passed through a ridge and descended approximately 100 feet in the terminal thousand feet. A spillway was constructed to carry the water down the descent. This ditch was approximately three miles in length, and there was a spur

⊚⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

670 feet long extending northwest into a bayou about 2,000 feet south of the initial point.

In 1910 the board of county commissioners established another drainage ditch known as drainage ditch No. 2, which extended north from the northern terminal of drainage ditch No. 1, for a distance of about 12 miles. This ditch likewise had a 40-foot bottom and was constructed at a cost of $81,106.19. These two ditches, making in fact one continuous ditch, drained certain agricultural lands, and traversed the land north of the city of Sioux Falls near the gravel bed from which the city obtained its water supply. It also passed near the state penitentiary lands and emptied into the Big Sioux river north of the falls in said river.

In the year 1916 there was a breaking of the river through the natural barrier into the bayou drained by the lateral branch. This, coupled with the large volume of water passing through these ditches, made it impossible for the spillway to carry the same, and it was washed out and destroyed. The waters therefore being uncontrolled descended from the steep bluff to the level of the Big Sioux river, and serious damage was threatened to various interests. There was danger that the Big Sioux river which flowed through the city of Sioux Falls would be diverted from its course and flow through these ditches cutting off the water supply of the city of Sioux Falls, injuring the Northern States Power Company, and depriving it of its water power.

The board of county commissioners attempted to devise some plan to reconstruct the spillway and to protect these various interests from the threatened damages.

April 8, 1916, certain parties filed a petition with the board of county commissioners asking that that portion of drainage ditch No. 1 containing the old spillway be closed and abandoned, and the course of said ditch extended in a southerly direction through Covell's Lake to the Big Sioux river; and said board did pass a resolution that said drainage ditch No. 1 be permanently closed above the present spillway or outlet thereof.

August 3, 1916, a petition of F. L. Blackman and other parties was filed entitled, "To Reconstruct and Improve Drainage Ditches Numbers One and Two in Minnehaha County, South Dakota, and to Construct a New Spillway or Outlet to said Drainage Ditches Numbers One and Two and to Pay Therefor by an Assessment upon the Property, Persons and Corporations Benefited Thereby." This petition was transmitted by the board to the state engineer, and on August 14, 1916, a survey was ordered.

September 13, 1916, a report of the survey was made and filed by the engineer in charge. A resolution was thereupon adopted by the board fixing the line and width of said new proposed ditch in the exact location of old ditches No. 1 and No. 2, and providing for the time and place of hearing the petition. Notice was published for three successive weeks describing the route of the proposed drainage, and the tract of country likely to be affected thereby, in the general terms provided by the statute; also, the separate tracts of land through which the proposed ditch would pass, and the names of the owners of said tracts. Such notice informed all persons affected by the proposed drainage to appear at such hearing and show cause why the same should not be established. Upon the return date of the notice the commissioners adopted a resolution purporting to establish the so-called drainage ditch No. 1 and 2, and providing for the reconstruction of the spillway.

No appeal was taken from this order establishing the purported new project.

The commissioners then caused ditches No. 1 and No. 2 to be cleaned out, widened, deepened, and diked so as to increase the carrying capacity; caused the spillway to be reconstructed, and certain portions of the Big Sioux river to be straightened. This work cost approximately $255,000, and drainage warrants were issued to be paid out of taxes assessed against the property determined to be benefited within the area of the purported new drainage ditch No. 1 and 2. The largest holders of these warrants are interveners in this action.

In April, 1919, notice was published of a hearing upon the matter of equalizing benefits resulting from said drainage ditch No. 1 and 2, and this was the first intimation that certain of appellees had that benefits might be assess-

ed against them. The property of some of the appellees was not covered by the notice. However, the proceedings under this notice were abandoned.

June 10, 1921, appellant board by resolution fixed a proportion of benefits in units, which had been decided upon as a fair method of arriving at the same, on drainage ditch No. 1 and 2, and designated Monday August 1, 1921, at the office of the county auditor, as the time and place for a hearing on the question of equalizing benefits, and caused notice of such hearing to be published as provided by the statute. Under the unit system adopted by the board upon recommendation of their engineer, the various appellees had units allotted against them as follows:

Chicago, Rock Island & Pacific Railway Company, out of a total of 32,-549 62 units, 839.45.

Chicago, Milwaukee & St. Paul Railway Company, 1,681.

Chicago, St. Paul, Minneapolis & Omaha Railway Company, 839.45.

Northern States Power Company, 5,351.63.

Great Northern Railway, 613.85.

City of Sioux Falls, 3,147.95.

The amount due on warrants issued for this work at the time the actions were brought was about $300,000. The total units of benefit aggregate 32,549.-62, so each unit of benefit amounts to slightly in excess of $9. If no changes had been made by the board, had they been permitted to proceed, the amounts charged against various appellees would have ranged from $50,000 against the Northern States Power Company to substantially $6,000 against the Great Northern Railway Company.

Appellees brought suit to restrain appellants from proceeding further with the equalization of said purported benefits and from levying any assessment upon their property to pay therefor. Some of the appellees had no property in original ditch district No. 1 and No. 2; others of appellees did have, and some difference is made in the contention of those not having property in the original ditch district and those who did have, but the issues in the main were the same as to all the parties.

All of the appellees contended in the trial court that the South Dakota drainage law was unconstitutional, violating the Fourteenth Amendment to the Constitution of the United States; that it also violated sections 2 and 3 of article 6 of the Constitution of the State of South Dakota. Some of the appellees contended that the board exceeded its powers in what it attempted to do, in that the same was not for the drainage of agricultural lands, but being for other public purposes, could only be carried on by the corporate authority of drainage district entities established for that purpose, which had not been done, and that consequently the proceedings were void.

Others of the appellees contended that the proceeding seeking to establish drainage ditch No. 1 and 2 was a subterfuge to impose liability on new territory to pay for the maintenance of the former ditches, and that the proceedings were for maintenance and repair of the old drainage ditch and were not carried on as provided by section 8470 of the Code of South Dakota relating to assessments for the maintenance of drainage already established; that drainage ditch No. 1 and 2 was not a new ditch and not a new enterprise.

Further claim is made by the railroad appellees that the South Dakota drainage law is unconstitutional so far as respects assessments of railroad property, in that it provides for the giving of no notice whatever of the apportionment and equalization of benefits to railroad companies.

All appellees claim that the attempted assessments upon their property are arbitrary, unjust and illegal, and constitute a discrimination so palpable and arbitrary as to amount to a denial of the equal protection of the law; and that the proceedings create a cloud upon their title.

It was the position of appellants, on the other hand, that the statutes referred to were constitutional; that the federal court in equity had no jurisdiction because there was a complete remedy at law; that there was no equitable question involved; no irreparable injury shown; no facts sufficiently pleaded to show any threatened cloud upon title; that the amount involved was not sufficient to give jurisdiction; that the bringing of the suit was

premature; that ditch No. 1 and 2 was legally established as a new drainage project under the statutes of South Dakota; and that the board of county commissioners had full jurisdiction to do each and every act which they performed.

The trial court held that section 8461 of the Revised Statutes of South Dakota, being the statute particularly attacked as unconstitutional, gave sufficient notice and opportunity to be heard before an assessment became a lien against the property, and was constitutional. The court also held that the proceedings of the commissioners were proceedings for the maintenance of the original ditches No. 1 and No. 2; that there was no abandonment of the old ditches; that the formation of the new ditch was a pretense and subterfuge carried oh for the purpose of compelling property outside of the original ditches No. 1 and No. 2 to share the burden of the repair and maintenance of these ditches, and held that the proceedings of the commissioners with relation to ditches No. 1 and No. 2, by attempting to constitute a new drainage district and calling it district No. 1 and 2, were void.

The court further found that the complaints presented a real and substantial question under the Constitution of the United States; that the amount involved was in excess of $3,000 exclusive of interest and costs, and that each complainant stated a case in his bill cognizable in equity in the federal court; and that there was no adequate remedy at law. Also found that diversity of citizenship existed as to all appellees, except as to the city of Sioux Falls; also, that the method of attempted assessment was discriminatory and arbitrary. The injunctions as prayed were granted.

N. B. Bartlett and E. O. Jones, both of Sioux Falls, S. D., for appellants.

A. B. Fairbank, of Sioux Falls, S. D. (Edward S. Stringer, Thomas D. O'Brien, and Alexander E. Horn, all of St. Paul, Minn., on the brief), for appellee Chicago, R. I. & P. Ry. Co.

C. O. Bailey, of Sioux Falls, S. D., and E. L. Grantham, of Aberdeen, S. D. (H. H. Field, of Chicago, Ill., and J. H. Voorhees, P. G. Honegger, T. M. Bailey, and C. O. Bailey, Jr., all of Sioux Falls, S. D., on the brief), for appellee Chicago, M. & St. P. Ry. Co.

C. O. Bailey, of Sioux Falls, S. D. (R. L. Kennedy, of St. Paul, Minn., and J. H. Voorhees, P. G. Honegger, T. M. Bailey, and C. O. Bailey, Jr., all of Sioux Falls, S. D., on the brief), for appellee Chicago, St. P., M. & O. Ry. Co.

Harold E. Judge, of Sioux Falls, S. D. (R. M. Campbell, of Chicago, Ill., on the brief), for appellee Northern States Power Co.

C. O. Bailey, of Sioux Falls, S. D. (Roy B. Marker, of Sioux Falls, S. D., on the brief), for appellee City of Sioux Falls.

Harold E. Judge, of Sioux Falls, S. D., for appellee Great Northern Ry. Co.

Before KENYON, Circuit Judge, and TRIEBER and DYER, District Judges.

KENYON, Circuit Judge (after stating the facts as above). [1] It is earnestly contended by appellees that the entire South Dakota drainage law is unconstitutional, not only as violative of the due process clause of the Fourteenth Amendment of the Federal Constitution, but also of sections 2 and 13 of article 6 of the South Dakota Constitution. The constitutional questions raised are grave, serious, and doubtful. Their determination is not necessary to the solution of these cases. Therefore, under the well-established rule that federal courts will not

pass upon the constitutionality of statutes unless absolutely necessary, we leave the questions aside. Howat et al. v. State of Kansas, 258 U. S. 181, 42 Sup. Ct. 277, 66 L. Ed. 550; Weyman-Bruton Co. v. Ladd, 231 Fed. 898, 146 C. C. A. 94; Allen, U. S. Atty., v. Omaha Live Stock Commission Co. et al. (C. C. A.) 275 Fed. 1.

[2] The original drainage ditches No. 1 and No. 2 were properly established for the drainage of agricultural lands. When the spillway washed out, the maintenance of the ditches was impaired. Not only that, but the situation was fraught with grave consequence to many interests. The steep bluff was being torn away by the uncontrolled waters; the waterworks and water supply of the city of Sioux Falls, as well as the penitentiary lands of the state, were endangered. A not improbable result of the Big Sioux river breaking through the natural barrier into the lateral ditch would be the entire diversion of its waters from their natural channel causing them to flow through said ditches and empty into the river north of the city, leaving Sioux Falls with an intermittent dry river bed.

The board of county commissioners under these conditions took steps to remedy the situation, and upon petition filed stating its object in its caption as follows: "To Reconstruct and Improve Drainage Ditches Numbers One and Two in Minnehaha County, South Dakota, and to Construct a New Spillway or Outlet to Said Drainage Ditches Numbers One and Two and to Pay Therefor by an Assessment upon the Property, Persons and Corporations Benefited Thereby," proceeded to establish what is termed drainage ditch No. 1 and 2, Minnehaha county, S. D.

Appellees who have property within the area of the original drainage ditches, No. 1 and No. 2, insist that the proceedings established a new drainage ditch known as No. 1 and 2, which is also the position taken by appellants. Other appellees claim that the work was in truth and in fact a project for the repair of drainage ditches No. 1 and No. 2. The court held that the forming of the new ditch was a pretense and subterfuge resorted to for the purpose of attempting to burden appellees with the cost of maintenance of ditches theretofore constructed; that the commissioners did not act as by law provided for the maintenance and repair of the ditches; and that the proceedings attempting to establish the new drainage ditch were void. We think the court was correct in this holding. It clearly expressed the situation as follows:

"Under these circumstances the board of county commissioners had absolutely no authority, no right or color of right, were not acting under the provision of any statute of the state when they assumed the right to reach out and attempt to assess the benefits for the repair and maintenance of said ditches against the property of the various plaintiffs. They were mere trespassers, for the reason that no drainage ditch No. 1 and 2 was ever established and has no existence.

"I am of opinion that the proceedings of the board of commissioners in the repair and maintenance of these ditches, No. 1 and No. 2, by assuming the right to constitute a new drainage district, calling it district No. 1 and 2, and to assess benefits to the property of the plaintiffs, in so far as they are located in the city of Sioux Falls, are void. Entertaining this view, it follows that plaintiffs' prayer for an injunction should be granted."

Record, p. 90, Case No. 6313.

The proceedings, regardless of how designated, were in fact for repair and maintenance, and were governed as to assessments to pay for the same by section 8470 of the South Dakota Statutes, which section is as follows:

"*Assessments for Maintenance.*—For the cleaning and maintenance of any drainage established under the provisions of this article, assessments may be made upon the landowners affected in the proportions determined for such drainage at any time upon the petition of any person setting forth the necessity thereof, and after due inspection by the board of county commissioners. Such assessments shall be made as other assessments for the construction of drainage, certificates may be issued thereon and such assessments and certificates shall be liens, interest-bearing, perpetual and enforceable, in all respects as original assessments and may be sold at not less than par by the board of county commissioners, turned over to persons contracting for such cleaning and maintenance, or may be collected directly by the board of county commissioners." Section 13, c. 98, 1905; section 13, c. 134, 1907.

There is no provision in this statute for the taking in of other lands to help bear the assessment of burdens created in maintaining the original drainage. This was the statute under which the board of county commissioners could have provided for payment of maintenance and repairs to the established ditches.

Section 8489 provides for a method of abandonment of drains under certain circumstances and the construction of new ones in the same location. Said statute is as follows:

"*Invalid or Abandoned Proceedings.*—If any proceeding for the location, establishment or construction of any drain under the provisions of a previous law has been heretofore enjoined, vacated, set aside, declared void, dismissed or voluntarily abandoned, or if any such proceeding or like proceeding under this article be hereafter enjoined, vacated, set aside, declared void, dismissed or voluntarily abandoned in consequence of any error, defect, irregularity or want of jurisdiction affecting the validity of such proceeding or for any cause, the board of county commissioners may nevertheless proceed to locate a drain or drains under the same or different names and in the same or different locations from those described in the invalid or abandoned proceedings under the provisions of this article. In case any new proceeding be had resulting in the location of a drain in the same or substantially the same location as that described in the invalid or abandoned proceeding, the board of county commissioners shall proceed to ascertain the real value of the services rendered, money expended and work done under such invalid, abandoned or dismissed proceeding, and the extent to which the same will contribute to the location, establishment or completion of such new drain. Such value shall be determined at a hearing upon the same notice as the equalization of benefits or assessments, and may be at the same time or at any other time, and the notice of such hearing may be a part of the notice of the hearing upon the equalization of benefits or assessments or separate therefrom, but the board shall in any case notify all persons interested to show cause why the determination of the board thereupon shall not be final. When finally fixed such value shall become a part of the cost of the new drainage. No use shall be made by any board of county commissioners in the laying out or completion of any drain or ditch under this article of any map, chart, survey, or other work done under any former law or under this article without having paid therefor; and all sums allowed for any work or material or money expended under the provisions of any previous law or under this article shall be paid to the persons who have paid therefor in proportion to the amounts severally paid by such persons." Section 33, c. 134, 1907.

The proceedings establishing drainage ditches No. 1 and No. 2 have never been set aside or abandoned under this statute. It is true a small

portion of old ditch No. 1 was abandoned by the resolution adopted in the Covell's Lake proceeding, but the ditches were in no way abandoned. The Covell's Lake proceeding was itself abandoned and the ditches were left as they originally were, so it is apparent that the action of the board was not taken under section 8489. Either the proceedings were to repair and maintain ditches already constructed, or they were to take care of a situation resulting from their imperfect or inadequate construction. By reason of the water of the river breaking through into the lateral threatening a change of the river's course and the possible destruction of state lands, a situation was presented, not with relation to the drainage of agricultural lands, but rather to the failure of the ditches, due to inadequate or imperfect construction, to carry the increased flow of water. In other words, the project, if an entirely new one, was not for the drainage of agricultural lands. The court said in his opinion:

"Pursuant to this provision of the Constitution, the Legislature of the state has provided for the drainage of agricultural lands; but nowhere is there any statutory enactment under which drainage districts may be formed for the drainage of lands 'for any public use.'"

[3] We are satisfied that under the South Dakota Constitution, section 6, art. 21, drainage of lands for any public use other than the drainage of agricultural lands, must be carried out by drainage districts, and no legislation at the time of these proceedings had been provided for the establishment of such drainage districts. Whichever way, therefore, the matter is viewed, the board was acting without legal authority in its apportionment of benefits and threatened assessment of taxes.

[4, 5] Appellants challenge the jurisdiction of the court, claiming there was a plain, adequate, and complete remedy at law; that there was no equity in the bill; that action was premature, and that the necessary jurisdictional amount was not involved. These in their order.

It is fundamental that equity cannot give relief where there is a plain, adequate, and complete remedy at law. It is provided by the federal Judicial Code, Compiled Stat. 1918, § 1244, as follows:

"*Suits in Equity.*—Suits in equity shall not be sustained in any court of the United States in any case where a plain, adequate, and complete remedy may be had at law. (R. S. § 723. March 3, 1911, c. 231, § 267, 36 Stat. 1163.)"

It must be a remedy as certain, complete, prompt, and efficient to attain the ends of justice as that in equity. Monmouth Inv. Co. et al. v. Means, 151 Fed. 159, 80 C. C. A. 527; McMullen Lumber Co. v. Strother et al., 136 Fed. 295, 69 C. C. A. 433; Morgan v. Beloit, City and Town, 74 U. S. (7 Wall.) 613, 19 L. Ed. 203; McConihay v. Wright, 121 U. S. 201, 7 Sup. Ct. 940, 30 L. Ed. 932; Tyler v. Savage, 143 U. S. 79, 12 Sup. Ct. 340, 36 L. Ed. 82; Boise Artesian Hot & Cold Water Co. v. Boise City, 213 U. S. 276, 29 Sup. Ct. 426, 53 L. Ed. 796; Greene, Auditor, et al., etc., v. Louisville & Interurban Railroad Co., 244 U. S. 499, 37 Sup. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88; Coler et al. v. Board of Com'rs of Stanly County et al. (C. C.) 89 Fed. 257.

It must be a remedy on the law side of the federal court. A remedy in the state court that cannot be pursued in the federal court is not an adequate remedy. Sheffield Furnace Co. v. Witherow, 149 U. S. 574, 13 Sup. Ct. 936, 37 L. Ed. 853; Smyth v. Ames, 169 U. S. 466, 516, 18 Sup. Ct. 418, 42 L. Ed. 819; United States Life Ins. Co. in City of New York v. Cable, 98 Fed. 761, 39 C. C. A. 264; Brun et al. v. Mann, 151 Fed. 145, 80 C. C. A. 513, 12 L. R. A. (N. S.) 154.

[6] The question is: Has party the adequate remedy at law in the federal court?

In Reagan v. Farmers' Loan & Trust Co., 154 U. S. 362, 391, 14 Sup. Ct. 1047, 1052 (38 L. Ed. 1014), the court said:

"Nor can it be said in such a case that relief is obtainable only in the courts of the state. For it may be laid down as a general proposition that, whenever a citizen of a state can go into the courts of a state to defend his property against the illegal acts of its officers, a citizen of another state may invoke the jurisdiction of the federal courts to maintain a like defense. A state cannot tie up a citizen of another state, having property rights within its territory invaded by unauthorized acts of its own officers, to suits for redress in its own courts. Given a case where a suit can be maintained in the courts of the state to protect property rights, a citizen of another state may invoke the jurisdiction of the federal courts."

It has been held that where the state statute provided an action at law against the county for the recovery of sums paid on account of invalid taxes that the same constitutes a plain, speedy, and adequate remedy at law. Union Pac. R. Co. v. Board of Com'rs of Weld County, Colo., 217 Fed. 540, 133 C. C. A. 392. The Supreme Court of the United States has held that the North Dakota statute permitting actions respecting title of the property or accruing on contract to be brought against the state the same as against a private person does not clearly allow an adequate remedy; and there, injunction restraining defendants from taking steps to enjoin certain taxes, was upheld. Wallace et al. v. Hines, Director General of Railroads, et al., 253 U. S. 66, 40 Sup. Ct. 435, 64 L. Ed. 782. There was no such proceeding as discussed in Union Pac. R. Co. v. Board of Com'rs of Weld County, Colo., supra, in the South Dakota statutes. The only remedy was to appear before the board of county commissioners (claimed by appellees to be acting without authority), and then appeal from their finding to the state court. Such was not the adequate remedy contemplated by the federal statute.

[7] While the frequent exercise of equity jurisdiction is in staying the collection of taxes illegal in whole or in part, a suit in equity will not lie to restrain the assessment or collection of a tax on the sole ground that it is illegal. There must be special circumstances bringing the case under some recognized head of equity jurisdiction. The right to such equitable relief must be clear where it is asked to restrain the collection of a state tax.

In Hannewinkle v. Georgetown, 15 Wall. 547, 548 (21 L. Ed. 231), it is said:

"It has been the settled law of the country for a great many years, that an injunction bill to restrain the collection of a tax, on the sole ground of the illegality of the tax, cannot be maintained. There must be an allegation of

fraud; that it creates a cloud upon the title; that there is apprehension of multiplicity of suits, or some cause presenting a case of equity jurisdiction."

In Union Pacific Railway Co. v. Cheyenne, 113 U. S. 516, 525, 526, 5 Sup. Ct. 601, 605 (28 L. Ed. 1098), the rule is clearly laid down by the court:

"It cannot be denied that bills in equity to restrain the collection of taxes illegally imposed have frequently been sustained. But it is well settled that there ought to be some equitable ground for relief besides the mere illegality of the tax; for it must be presumed that the law furnishes a remedy for illegal taxation. It often happens, however, that the case is such that the person illegally taxed would suffer irremediable damage, or be subject to vexatious litigation, if he were compelled to resort to his legal remedy alone. For example, if the legal remedy consisted only of an action to recover back the money after it had been collected by distress and sale of the tax-payer's lands, the loss of his freehold by means of a tax sale would be a mischief hard to be remedied. Even the cloud cast upon his title by a tax under which such a sale could be made, would be a grievance which would entitle him to go into a court of equity for relief. Judge Cooley fairly sums up the law on this subject as follows: 'To entitle a party to relief in equity against an illegal tax, he must by his bill bring his case under some acknowledged head of equity jurisdiction. The illegality of the tax alone, or the threat to sell property for its satisfaction, cannot, of themselves, furnish any grounds for equitable interposition. In ordinary cases a party must find his remedy in the courts of law, and it is not to be supposed he will fail to find one adequate to his proper relief. Cases of fraud, accident or mistake, cases of cloud upon the title to one's property, and cases where one is threatened with irremediable mischief, may demand other remedies than those the common law can give, and these, in proper cases, may be afforded in courts of equity.' This statement is in general accordance with the decisions of this court as well as of many state courts."

See, also, Dows v. City of Chicago, 78 U. S. (11 Wall.) 108, 20 L. Ed. 65; State Railroad Tax Cases, 92 U. S. 575, 23 L. Ed. 663; Ogden City v. Armstrong, 168 U. S. 224, 18 Sup. Ct. 98, 42 L. Ed. 444; Pittsburgh, etc., Railway v. Board of Public Works of W. Va., 172 U. S. 32, 19 Sup. Ct. 90, 43 L. Ed. 354; Singer Sewing Mach. Co. v. Benedict, 229 U. S. 481, 33 Sup. Ct. 942, 57 L. Ed. 1288; Ohio Tax Cases, 232 U. S. 576, 34 Sup. Ct. 372, 58 L. Ed. 737.

In Keokuk & Hamilton Bridge Co. v. Salm et al., 258 U. S. 122, 42 Sup. Ct. 207, 66 L. Ed. 496, the alleged invalidity consisted in discriminatory overvaluation. There was no claim of absolute illegality in the assessment. Appellant had a remedy with the board of review to correct the assessment, and the court said that resort to the suit to prevent either a sale for an illegal tax creating a cloud upon title or other irreparable injury had no basis.

In Union Pacific R. Co. v. Board of Com'rs of Weld County, 217 Fed. 540, 133 C. C. A. 392, this court said with reference to the casting of a cloud upon real property creating an "equitable circumstance" that the remedy which the statute prescribes will dissipate any such cloud, and says:

"Those cases which hold that a cloud upon the title to real property affords a ground for equitable relief are not applicable, when the taxpayer is given the remedy of paying his taxes and recovering back any sum which the courts shall hold to have been illegally exacted."

There is no such provision in the South Dakota statute.

In Boise Artesian Hot & Cold Water Co. v. Boise City, 213 U. S. 276, 29 Sup. Ct. 426, 53 L. Ed. 796, it was held that equity should not enjoin the collection of a tax on the ground of cloud on title when the tax can only be collected in suit at law in which the defense of its illegality is open, and further it not appearing that the tax is a lien on any of complainant's property.

In Indiana Manufacturing Co. v. Koehne, 188 U. S. 681, 23 Sup. Ct. 452, 47 L. Ed. 651, certain assessments upon shares of stock in a corporation were involved. The court found that as there was no lien created on real estate there was no cloud on title.

[8, 9] It is well settled that an assessment that will put a cloud on title gives rise to equitable jurisdiction unless there is an adequate remedy at law. Union Pacific Railway Co. v. Cheyenne, 113 U. S. 516, 5 Sup. Ct. 601, 28 L. Ed. 1098; Greene, Auditor, et al., etc., v. Louisville & Interurban Railroad Co., 244 U. S. 499, 37 Sup. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88.

Section 8463 of the South Dakota Statutes provides for the board of county commissioners fixing the proportion of benefits of proposed drainage among the lands affected.

Section 8464 provides for the board making an assessment against each tract and property affected, and this is collectible by the treasurer's office. Clearly the assessment would create a cloud upon the title. Fixing the proportion of benefits being preliminary to the assessment and a part of the machinery of assessment, likewise, we think, creates a cloud upon the title and gives equity jurisdiction. Shelton v. Platt, 139 U. S. 591, 11 Sup. Ct. 646, 35 L. Ed. 273; Ohio Tax Cases, 232 U. S. 576, 34 Sup. Ct. 372, 58 L. Ed. 737; Hopkins et al. v. Walker et al., 244 U. S. 486, 37 Sup. Ct. 711, 61 L. Ed. 1270.

[10] Was the case prematurely brought? It is claimed that inasmuch as the board of county commissioners had not assessed the taxes complained of consequently the suit is premature.

In Western Union Telegraph Co. v. Howe et al., 180 Fed. 44, 103 C. C. A. 398, it was held by this court that the suit was prematurely brought because the telegraph company did not pursue the remedy afforded by law to have its assessment corrected by the state board of equalization. That was not a case, however, where it was claimed that the entire proceedings were without authority and illegal, as is the case here. The jurisdiction to act was not questioned.

In Keokuk & Hamilton Bridge Co. v. Salm et al., 258 U. S. 122, 42 Sup. Ct. 207, 66 L. Ed. 496, the question involved was the amount of the tax. It was not claimed that the proceedings were illegal.

In the late case of Milheim et al. v. Moffat Tunnel Improvement District et al., 262 U. S. 710, 43 Sup. Ct. 694, 67 L. Ed. 1194, there was no question of jurisdiction of the taxing body as there is here. Plaintiff's property was by legislative act placed within the taxing district.

The proceeding here involved, being without authority, the situation is quite different from where the only question involved is the inequality of taxes levied by a board having jurisdiction to act. The actions, we are satisfied, were not premature.

[11] Appellants urgently insist that it does not appear from the record that the amount in controversy, exclusive of interest or costs, exceeds the sum or value of $3,000, and that the statements in the various complaints of appellees so alleging are false, and stated with the fraudulent purpose of imposing upon the jurisdiction of the federal court; that no tax has in fact been assessed; that the apportionment of benefits is tentative and subject to correction; and that there is no way of determining what the amount of the assessment against the respective appellees would have been had the proceedings not been interrupted by the injunctions; and that there is in fact no sum whatsoever in controversy between the parties hereto.

It has been held that future, undetermined, unaccrued, or unspecified taxes cannot be taken into consideration to give jurisdiction; that the court cannot engage in speculation as to such taxes. Holt v. Indiana Manufacturing Co., 176 U. S. 68, 20 Sup. Ct. 272, 44 L. Ed. 374; New England Mortgage Security Co. v. Gay, 145 U. S. 123, 12 Sup. Ct. 815, 36 L. Ed. 646; Citizens' Bank v. Cannon, 164 U. S. 319, 17 Sup. Ct. 89, 41 L. Ed. 451; Washington & Georgetown R. R. Co. v. District of Columbia, 146 U. S. 227, 13 Sup. Ct. 64, 36 L. Ed. 951. Also, that where there is a suit to enjoin collection of a tax the amount of the tax is the test of jurisdiction. Linehan Ry. Transfer Co. v. Pendergrass, 70 Fed. 1, 16 C. C. A. 585; Eachus v. Hartwell et al. (C. C.) 112 Fed. 564; Washington & Georgetown R. R. Co. v. District of Columbia, 146 U. S. 227, 13 Sup. Ct. 64, 36 L. Ed. 951; Board of Trustees of Whitman College v. Berryman et al. (C. C.) 156 Fed. 112; Citizens' Bank v. Cannon, 164 U. S. 319, 17 Sup. Ct. 89, 41 L. Ed. 451; City of Ottumwa, Iowa, v. City Water Supply Co., 119 Fed. 315, 56 C. C. A. 219, 59 L. R. A. 604.

It has also been held that where the complaint alleges the amount in controversy to equal the jurisdictional requirement and the contrary does not appear to a certainty from the evidence, that the jurisdiction will be sustained. Maffet v. Quine (C. C.) 95 Fed. 199; Von Schroeder v. Brittan (C. C.) 93 Fed. 9.

What is the situation here? Each one of the appellees is threatened with an assessment of more than $3,000. The Northern States Power Company is threatened with one of $50,000. And further, certain appellees who have no property within the original drainage districts No. 1 and No. 2 are brought into the district and made liable to future assessments for maintenance and repair of ditches. It appears from the record that the board of county commissioners had fixed against the different appellees the proportion of benefits on a unit basis. It is without question that the county commissioners have issued approximately $255,000 worth of warrants for this work, and that the amount due thereon is about $300,000. It is a matter then of mere mathematical calculation to arrive at the threatened assessment against each one of appellees.

Exhibit C is the notice to the various parties against whom proportions of benefits have been fixed. It provides as follows, to wit:

"All such owners and all persons interested are hereby notified and summoned to show cause at the time and place aforesaid why the proportion of

benefits shall not be fixed as stated, and the said determination of said board made final."

If no action whatever were taken by appellees the amounts would be final, and under these circumstances we believe the amount in dispute in each case exceeds the jurisdictional requirement. The claim of amount is evidently made in good faith, and not for the mere purpose of giving the federal courts jurisdiction. We do not believe that where the board has passed a resolution fixing benefits which exceed the jurisdictional amount and are the basis of a proposed assessment, and which parties claim are fixed by the board without authority, that because said board may equalize the benefits or even find that no benefit exists the parties must wait until the final action of the board. It is suggested that the board may so equalize benefits that the jurisdictional amount will not be involved, but as the matter stood when the case was brought each appellee was threatened with the levying of a tax for more than the jurisdictional amount, and some of the necessary steps had already been taken.

As the proportion of benefits had been fixed subject to change by the board only if appellees should convince them that their conclusion was erroneous, and in view of the claim in apparent good faith in each of the bills that the amount involved exceeded the jurisdictional amount, we hold, from a careful survey of the entire record, that the necessary amount existed in each case to give jurisdiction to the federal court.

[12] All bills of complaint raise questions under the federal Constitution that are substantial and not merely colorable. Hence the court has jurisdiction exclusive of diversity of citizenship, which existed as to all appellees except the city of Sioux Falls, necessary amount being involved, to determine all questions in the record, and it has not lost jurisdiction by omitting to decide the constitutional ones. Siler et al., etc., v. Louisville & Nashville R. R. Co., 213 U. S. 175, 29 Sup. Ct. 451, 53 L. Ed. 753; Ohio Tax Cases, 232 U. S. 576, 34 Sup. Ct. 372, 58 L. Ed. 737; Louis. & Nash. R. R. Co. v. Finn, 235 U. S. 601, 35 Sup. Ct. 146, 59 L. Ed. 379; Greene, Auditor, et al., etc., v. Louis. & Interurban R. R. Co., 244 U. S. 499, 37 Sup. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88.

[13] Appellants plead estoppel against all of the appellees, and claim that appellees are not in position to maintain their actions, for the reason that as to some of the railroad companies the engineering departments have been in close touch with the drainage ditch proceedings; that some of them were assessed for benefits received upon the construction of the original drainage ditches in the same territory, received benefit thereby, and have not protested before the bringing of this action. As to some of the appellees it is claimed that their officers showed interest in the construction work and encouraged the board of commissioners to do the work; that some of the appellees, for instance, the Chicago, Milwaukee & St. Paul Railway Company, hauled men and materials used in the construction work, and stopped trains between stations to unload men and materials. As to the city of Sioux Falls, it is claimed by way of estoppel that under due au-

thority the mayor and city auditor signed the petition for the project. There can certainly be no just claim of estoppel as to those appellees whose property was not within the area of the original drainage ditches No. 1 and No. 2. As to the other appellees, the decree related only to the property outside of the original assessment areas of drainage ditches No. 1 and No. 2. So we are to consider the situation as bearing on the question of estoppel only as to the property outside of the original assessment areas up to the time of the notice of the fixing of benefits. The various appellees as to such property had no notice, when the acts constituting the alleged estoppel took place, that the same was to be affected by the drainage construction or would be assessed for the cost thereof. Hence the claimed acts of agents and officers of appellees would not constitute estoppel. The situation is quite different from that presented in Gilseth v. Risty (S. D.) 193 N. W. 132—at least as to all appellees except the city of Sioux Falls. We do not pass on the question of estoppel as to any appellees, as to assessments that may be made on their property within the original area of ditch No. 1 and ditch No. 2, for the purpose of maintaining such ditches.

Other questions are presented which we think are not involved in the determination of these cases.

The decree of the trial court in each case is affirmed.